# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM C. PASSMORE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> VERTEX ENERGY, INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 1:23-cv-00128-TFM-N <br><br> <u>CLASS ACTION</u> |
| PHIL LEVSON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> VERTEX ENERGY, INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 1:23-cv-00197-KD-M <br><br> <u>CLASS ACTION</u> |

WILLIAM C. PASSMORE'S OPPOSITION TO COMPETING MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF

4881-0197-6685.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................1

II.   ARGUMENT......................................................................3

    A.    Neither Mr. Marti nor Mr. Zeman Are Eligible for Appointment as Lead Plaintiff..................................................................4

           1.    Mr. Marti Profited on His Vertex Stock Transactions and His Options Transactions Are Markedly Different from the Rest of the Class of Stock Purchasers...................................4

           2.    Mr. Zeman's Loss Is Individually Smaller than Mr. Passmore's and, When Combined with Mr. Marti's Stock Transactions, Mr. Marti and Mr. Zeman Experienced an Overall Stock Gain.......................................................7

    B.    Eric Bender and Nader Misri Are Ineligible for Appointment as Lead Plaintiff in *This* Action Because They Did Not Comply with the PSLRA.................................................................11

    C.    Only Mr. Passmore Qualifies for Appointment as Lead Plaintiff ......16

    D.    Mr. Passmore's First-Filed Action Should Be Consolidated with the *Levson* Action........................................................18

III.  CONCLUSION..................................................................19

4881-0197-6685.v1

# TABLE OF AUTHORITIES

Page

**CASES**

*Andrada v. Atherogenics, Inc.*,
2005 WL 912359 (S.D.N.Y. Apr. 19. 2005) ................................................5, 6, 7

*Applestein v. Medivation Inc.*,
2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) ................................................5, 6

*Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*,
2012 WL 2872787 (D. Idaho July 12, 2012) ......................................................6

*Burke v. Ruttenberg*,
102 F. Supp. 2d 1280 (N.D. Ala. 2000) ..............................................................3

*Cook v. Allergn PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ....................................................9

*Darwin v. Taylor*,
2012 WL 5250400 (D. Colo. Oct. 23, 2012) ....................................................15

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ....................................................9

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,
2021 WL 913934 (D. Utah Mar. 10, 2021) ........................................................5

*Gutman v. Sillerman*,
2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) ............................................12, 13

*Hargett v. Valley Fed. Sav. Bank*,
60 F.3d 754 (11th Cir. 1995) ............................................................................18

*In re Cable & Wireless, PLC, Sec. Litig.*,
217 F.R.D. 372 (E.D. Va. 2003) ........................................................................3

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................................16

4881-0197-6685.v1

**Page**

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
2018 WL 1902725 (D. Minn. Apr. 20, 2018)......................................................14

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002).........................................................................8

*In re HealthSouth Corp. Sec. Litig.*,
No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) .......................................................17

*In re Netflix, Inc., Sec. Litig.*,
2012 WL 1496171 (N.D. Cal. Apr. 27, 2012)......................................................8

*In re Stitch Fix Inc. Sec. Litig.*,
393 F. Supp. 3d 833 (N.D. Cal. 2019)...........................................................5, 17

*In re Telxon Corp. Sec. Litig.*,
67 F. Supp. 2d 803 (N.D. Ohio 1999) ...........................................................14, 15

*Jochims v. Oatly Grp. AB*,
2022 WL 20224129 (S.D.N.Y. Jan 24, 2022) ................................................2, 8

*Melton v. Plug Power Inc.*,
No. 1:23-cv-00409 (D. Del.)...............................................................................13

*Micholle v. Ophthotech Corp.*,
2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018).....................................................5

*Miller v. Dyadic Int'l, Inc.*,
2008 WL 2465286 (S.D. Fla. Apr. 18, 2008)....................................................14

*Montesano v. Eros Int'l PLC*,
2020 WL 1873015 (D.N.J. Apr. 14, 2020).........................................................12

*Newman v. Eagle Bldg. Techs.*,
209 F.R.D. 499 (S.D. Fla. 2002).........................................................................18

*Oklahoma Law Enf't Ret. Sys. v. Adeptus Health Inc.*,
2017 WL 3780164 (E.D. Tex. Aug. 31, 2017)...................................................14

4881-0197-6685.v1

**Page**

*Patel v. Reata Pharm., Inc.*,
   549 F. Supp. 3d 559 (E.D. Tex. 2021)......................................................1, 6, 7, 9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ..............................................................15

*Price v. Dish Network, LLC*,
   2016 WL 3825358 (S.D. Ala. July 13, 2016) .......................................11

*Stewart v. Plug Power Inc.*,
   No. 1:23-cv-00704 (N.D.N.Y.)................................................................13

*Stone v. Life Partners Holdings, Inc.*,
   2011 WL 13237569 (W.D. Tex. Aug. 12, 2011).................................15

*Topping v. Deloitte Touche Tohmatsu CPA*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015) .....................................................15

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ...........................................16

*Weikel v. Tower Semiconductor Ltd.*,
   183 F.R.D 377 (D.N.J. 1998)................................................................5, 6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b)..........................................................................................................18
   §78t(a)..........................................................................................................18
   §78u-4(a)(2)(A)..........................................................................................15
   §78u-4(a)(3)(A)(i)(II) ...........................................................................1, 12
   §78u-4(a)(3)(B)(ii).....................................................................................18
   §78u-4(a)(3)(B)(iii)....................................................................................10
   §78u-4(a)(3)(B)(iii)(I).................................................................................1
   §78u-4(a)(3)(B)(iii)(I)(aa) ........................................................................12
   §78u-4(a)(3)(B)(iii)(cc) .............................................................................16

4881-0197-6685.v1

Case 4:20-cv-02021-HSG   Document 145   Filed 06/30/23   Page X of 26   PageID #: 345

**Page**

Federal Rules of Civil Procedure
    Rule 7(b)(1)...................................................................................................11
    Rule 23 ................................................................................1, 7, 16, 19
    Rule 42(a)...................................................................................................18

Civil Local Rules
    Rule 7 ........................................................................................................11

4881-0197-6685.v1

## I.  INTRODUCTION

Three filings – two timely lead plaintiff motions and one untimely "notice" of a filing in another district court – were submitted to this Court by investors ostensibly seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The PSLRA provides that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."  15 U.S.C. §78u-4(a)(3)(A)(i)(II).  In making this determination, courts are to "adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Only William C. Passmore satisfies these elements.

Indeed, while Guillermo Marti and Frank J. Zeman, two strangers, claim that they suffered a larger combined loss than Mr. Passmore, neither satisfies both of the PSLRA's requirements.  Indeed, Mr. Marti experienced a ***gain*** on his common stock transactions and his remaining call options transactions subject him to atypical legal and factual questions.[1]  *See Patel v. Reata Pharm., Inc.*, 549 F. Supp. 3d 559, 568 (E.D. Tex. 2021) (finding that because "Massar incurred financial loss only from his

---

[1]  Importantly, Mr. Marti and Mr. Zeman's combined common stock financial interest also yields an overall gain.  *See infra* §II.A.2.

- 1 -

option contracts and in fact profited from his Reata common-stock investments during the Class Period," "Massar is atypical of the class and does not qualify to serve as lead plaintiff.").[2] With Mr. Marti out of contention, the group is reduced to Mr. Zeman, whose loss is smaller than Mr. Passmore's, rendering him ineligible for appointment. *See Jochims v. Oatly Grp. AB*, 2022 WL 20224129, at *1 (S.D.N.Y. Jan 24, 2022) (Declining to appoint group of two investors – one who only suffered losses only on stock and the other on call options – because "[t]he call options raise claims and defenses different from purchasers of [stock], and cannot be paired. The [group member] who claims [stock] losses does not have as great a financial interest as the [competing lead plaintiff movant]. The claims of purchasers of calls are not typical in material respects to the claims of the purchasers of [stock].").

The only other filing was by Eric Bender and Nader Misri, who ask this Court via a "notice of filing of motion" filed on June 26, 2023 – two weeks *after* the strictly-enforced statutory lead plaintiff deadline expired – to "consider" a motion they filed *in a different case* pending *in a different district*. Even assuming the "notice" was timely filed or they had bothered to provide an explanation for their failure to file a motion in this Court, because Mr. Bender and Mr. Misri did not file a timely *motion* in *this* case, they are plainly ineligible for lead plaintiff appointment under the PSLRA in this Court. By contrast, Mr. Passmore filed the initial complaint in this case, moved

---

[2]  Unless otherwise noted herein, all emphasis is added and citations are omitted.

4881-0197-6685.v1

this Court for appointment as lead plaintiff by the June 12, 2023 statutory deadline, possesses the largest loss of any qualified movant, has demonstrated both his typicality as well as his ability to serve in a fiduciary position of trust to absent class members, and has assembled an efficient, cohesive, and highly competent prosecution team.  Mr. Passmore's lead plaintiff motion should be granted.

## II.    ARGUMENT

The PSLRA was enacted to end perceived abuses in federal securities fraud class actions by eliminating the "race to the courthouse" as the method for selecting a lead plaintiff.  *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1305 (N.D. Ala. 2000).  To that end, the PSLRA instructs courts to appoint a lead plaintiff whom it "'determines to be most capable of adequately representing the interests of class members.'"  *Id.* at 1325; *see also In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003) ("a movant's financial interest is just a beginning point, and courts . . . must also consider the movant's ability and willingness to adequately represent the class").  "A district court must exercise ***exceptional care*** to insure that in applying the lead plaintiff provisions of the statute, the concerns that motivated Congress are carefully heeded . . . ."  *Burke*, 102 F. Supp. 2d at 1309 ("in determining lead plaintiff, this Court must be inordinately careful, making certain that the requirements of section 21D(a) are assiduously applied in line with the purposes of Congress in the enactment of the 1995 Reform Act").

- 3 -

4881-0197-6685.v1

**A.** **Neither Mr. Marti nor Mr. Zeman Are Eligible for Appointment as Lead Plaintiff**

**1.** **Mr. Marti Profited on His Vertex Stock Transactions and His Options Transactions Are Markedly Different from the Rest of the Class of Stock Purchasers**

Mr. Marti and Mr. Zeman's submission indicates that during the Class Period, Mr. Marti transacted in 229 option contracts and suffered approximately $61,600 in losses thereon. *See* ECF 23-2. Mr. Marti also purchased Vertex Energy, Inc. stock during the Class Period and reaped a $19,206 ***profit*** thereon.[3] *Id.* As such, Mr. Marti's financial interest in the relief sought by the class is limited to his call option transactions.

That is problematic because courts consistently hold that where a movant's financial interest is ***solely*** based upon options transactions, like Mr. Marti's here, that

---

[3] While Mr. Marti's loss chart (ECF 23-2) indicates that his stock profit was $17,566 (rather than $19,206), his loss chart contains a mathematical error because counsel forgot to add the $1,643 received on 5/11/2022 from the sale of 150 shares to his total proceeds of $75,242. When the May sale proceeds are properly included, his gross stock sale proceeds equals $76,885 which results in a $19,206 net gain. This computational error is significant because it yields a $190 net ***gain*** for Mr. Marti and Mr. Zeman's combined stock transactions (as compared to their claimed, but incorrect, $1,450 combined loss).

| Common Stock | 5/10/2022 | 1,680 | $10.9900 | ($18,463) | 5/11/2022 | (150) | $10.9501 | $1,643 | | | | |
| Common Stock | 5/10/2022 | 240 | $10.9800 | ($2,635) | 5/13/2022 | (150) | $12.9814 | $1,947 | | | | |
| Common Stock | 5/10/2022 | 70 | $10.9700 | ($768) | 5/13/2022 | (300) | $13.1101 | $3,933 | | | | |
| Common Stock | 5/10/2022 | 10 | $10.9600 | ($110) | 5/18/2022 | (700) | $15.0700 | $10,549 | | | | |
| Common Stock | 5/10/2022 | 2,000 | $10.8100 | ($21,620) | 5/18/2022 | (3,990) | $14.7401 | $58,813 | | | | |
| Common Stock | 5/10/2022 | 1,241 | $10.8900 | ($13,514) | | | | | | | | |
| Common Stock | 5/10/2022 | 30 | $10.8800 | ($326) | | | | | | | | |
| Common Stock | 5/10/2022 | 29 | $10.8700 | ($315) | | | | | | | | |
| **Common Stock** | | **5,300** | | **($57,752)** | | **(5,290)** | | **$75,242** | **10** | **$76** | **$17,566** | **$17,566** |

ECF 23-2.

- 4 -

movant is atypical of the rest of the putative class, and such movants are disqualified from serving as lead plaintiff. Indeed, it is well-accepted that "options traders may 'introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and could subject the class to unique defenses, causing unnecessary conflict.'" *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018); *see also Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, 2021 WL 913934, at *4 (D. Utah Mar. 10, 2021) (rejecting movant whose losses were based entirely upon the purchases of call options); *In re Stitch Fix Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (fact that movant's losses were based only on put options sufficient to dispute movant's adequacy and typicality); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19. 2005) (finding options trader atypical and inadequate for lead plaintiff purposes, and noting absence of cases "in which an option holder was deemed to be an appropriate lead plaintiff for an entire securities fraud class action"); *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) (determining that lead plaintiff had "insurmountable typicality and adequacy problems" because movant's "options trading and the information he used to make investment decisions could become the focus of the litigation, distracting from the central issue" of defendants' fraud); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D 377, 391-92 (D.N.J. 1998)

4881-0197-6685.v1

(finding an options purchaser "is neither a typical nor an adequate class representative").

Indeed, if Mr. Marti were "appointed lead plaintiff for the entire class, factual issues specific to [him] in determining the precise value of the options – *e.g.*, the maturity, the volatility of the price of the [Vertex] stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded – would likely 'threaten to become the focus of the litigation.'" *Andrada*, 2005 WL 912359, at \*5; *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 WL 2872787, at \*4 (D. Idaho July 12, 2012); *see also Weikel*, 183 F.R.D. at 391 (rejecting certification of class representative who had only purchased options where factual issues regarding value of options and damages would divert focus from the underlying securities litigation). The nature of "options trading and the information . . . used to make investment decisions [in connection therewith] could become the focus of the litigation, distracting from the central issue: did [Vertex] commit a fraud on the market?" *Applestein*, 2010 WL 3749406, at \*4. Simply put, investors who only suffered losses on options (rather than common stock) "should not be appointed lead." *Id.*; *see also Andrada*, 2005 WL 912359, at \*5.

*Patel* is directly on point. Like here, the movant claiming a larger loss in that case "trade[d] in both common stock and options during the Class Period, [but] his losses arose exclusively from his options; in fact, [the movant] profited from his

- 6 -

common-stock investments." 549 F. Supp. 3d at 567. As such, the *Patel* court concluded that the movant's "material gain in common stocks makes [the movant's] trading practices during the Class Period functionally the same as an investor who traded only in options and materially different from the putative class consisting largely of common stockholders." *Id.* (finding "the fact that [a movant's] losses during the Class Period were based solely on option contracts renders [that movant] atypical of the putative class"). In the end, the court concluded that the movant "is atypical of the class and does not qualify to serve as lead plaintiff." *Id.* at 568.

Similarly, Mr. Marti cannot be appointed as a lead plaintiff here because his circumstances are undeniably "materially different" from Vertex common stock purchasers who suffered losses during the Class Period. That Mr. Marti experienced gains on his common stock transactions and suffered losses ***only*** in option contracts leads to the inexorable conclusion that Mr. Marti's "motion to be appointed lead plaintiff fails because [he] is both atypical and inadequate to support the entire class." *Andrada*, 2005 WL 912359, at *5.

### 2. Mr. Zeman's Loss Is Individually Smaller than Mr. Passmore's and, When Combined with Mr. Marti's Stock Transactions, Mr. Marti and Mr. Zeman Experienced an Overall Stock Gain

Likely aware of the atypical nature of Mr. Marti's trading and his inability to satisfy the Rule 23 requirements at the lead plaintiff stage, counsel has attempted to

- 7 -

4881-0197-6685.v1

mitigate the defect by pairing Mr. Marti (a Costa Rican farmer) with Mr. Zeman (a Florida-based manufacturing company owner). But the law is clear that "the purpose of grouping Lead Plaintiffs is not to balance out each other's deficiencies." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002); *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at \*5 (N.D. Cal. Apr. 27, 2012) (declining to appoint a group where one of its members was subject to unique defenses).

This precise issue recently arose in *Oatly*, where Judge Hellerstein rejected a two-member movant group in which one member only suffered option contract losses and another only suffered stock losses despite the group's contention that their losses would exceed the next closest movant's losses by more than ten times "if their claims were aggregated." 2022 WL 20224129, at \*1. The court did so because it found that "[t]he call options raise claims and defenses different from purchasers of [stock], and cannot be paired." *Id.* Critically, like in *Oatly* where "the party who claims [stock] losses does not have as great a financial interest as the [next closest movant]," Mr. Zeman ($19,016) does not possess a larger financial interest than Mr. Passmore ($29,324).

Assuming *arguendo* that this Court were to depart from Judge Hellerstein's reasoning in *Oatly* and opt to view Mr. Marti and Mr. Zeman as a single non-segregable unit which (when taken collectively) traded in both stock (albeit at an overall gain) **and** options, the disproportional nature of this group's options losses

- 8 -

4881-0197-6685.v1

would nonetheless warrant disqualification as "courts have held that lead-plaintiff movants are atypical of or inadequate to represent a class largely consisting of common shareholders when a ***substantial portion*** of their losses are based on options." *Patel*, 549 F. Supp. 3d at 566-67 (citing *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (finding movant with largest alleged financial loss inadequate and atypical where more than 80% of losses were attributable to options-related transactions, noting that factual issues "'would likely threaten to become the focus of the litigation'"); *Cook v. Allergn PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (finding movant with largest alleged financial loss atypical where approximately 60% of losses were attributable to options-related transactions)). Indeed, ***all*** of Mr. Marti and Mr. Zeman's cumulative loss is from option transactions:

| | **Stock** | **Options** |
|---|---|---|
| Mr. Marti | **$19,206** Gain[4] | **$61,628** Loss |
| Mr. Zeman | **$19,016** Loss | |
| Total Loss: $61,438 | **$190** Gain | **$61,628** Loss |

Appointing such a group as lead plaintiff could be problematic for a host of practical reasons as well. If the Court were to later conclude that Mr. Marti is, in fact,

---

[4]     *See* n.3, *supra*.

atypical of the class, the person with the smallest loss (Mr. Zeman) would be serving as lead plaintiff but, pursuant to their declaration, Mr. Marti would be the **sole** decider in the event of any disagreement between the two movants (*e.g.*, how to allocate any potential settlement between options purchasers and stock purchasers). ECF 23-5 at ¶10 ("In the event that such a disagreement arises, we agree to resolve such disagreement by a majority vote, in which each of us possesses a number of votes equal to our losses incurred in connection with our Class Period purchases of Vertex securities, calculated in terms of U.S. dollars."). Stated differently, class members would be represented by a movant that lacks the largest financial interest and is not entitled to direct the outcome of the litigation (Mr. Zeman), while a movant with different interests to those of stockholders (Mr. Marti) would be able to dictate absolute control of the case. Such a result would be antithetical to the PSLRA which requires the appointment of the movant with the "largest financial interest" that is not "subject to unique defenses." 15 U.S.C. §78u-4(a)(3)(B)(iii).

In sum, because Mr. Marti did not suffer any losses on Vertex stock transactions (either individually or when his stock gains are combined with Mr. Zeman's stock losses), and he only suffered losses on atypical options transactions, Mr. Marti and Mr. Zeman do not satisfy Rule 23's requirements. On his own, Mr. Zeman does not meet the largest financial interest requirement. As such, the Court should not permit these two strangers to do together what they cannot do individually.

- 10 -

4881-0197-6685.v1

Their motion should be denied.

**B.      Eric Bender and Nader Misri Are Ineligible for
Appointment as Lead Plaintiff in *This* Action Because They
Did Not Comply with the PSLRA**

The third request for consideration as lead plaintiff comes from Mr. Bender and

Mr. Misri in the form of a June 26, 2023 "Notice of Filing of Motion for Appointment

as Lead Plaintiffs and Approval of Counsel in Related Action," wherein they ask the

Court to "consider" a lead plaintiff motion filed in ***another case*** pending in ***the***

***Southern District of Texas***.  ECF 29.  Procedural and substantive deficiencies doom

their unconventional request.

First, "[a] request for a court order ***must*** be made by motion," and Mr. Bender

and Mr. Misri have ***still*** not filed a motion in ***this*** Court.  *See* Fed. R. Civ. P. 7(b)(1);

S.D. Ala. CivLR 7 ("A request for Court action ***must*** be presented by motion and may

not be presented by informal means such as a letter.").  In fact, the notice does not

even ask the Court to appoint them as lead plaintiff in ***this*** Action, but rather asks the

Court to "consider" the motion that is currently pending before Judge Rosenthal in the

Southern District of Texas.  *See* ECF 29 at 2.  Because Mr. Bender and Mr. Misri

never moved for appointment in ***this*** case, their request is not before ***this*** Court.

Second, the "request is procedurally improper, both because it is not in the form

of a motion and because it was made long after the deadline for seeking such relief."

*Price v. Dish Network, LLC*, 2016 WL 3825358, at *4 (S.D. Ala. July 13, 2016).

- 11 -

4881-0197-6685.v1

Indeed, Mr. Bender and Mr. Misri's "notice" plainly runs afoul of the PSLRA which provides that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. §78u-4(a)(3)(A)(i)-(ii); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa) (identifying eligible candidates for appointment as those who "either filed ***the*** complaint or made a motion ***in response to a notice***" by the statutory deadline).[5]

Third, courts are clear that the statute's reference to "'***the***' complaint" means the first-filed complaint "that triggers the beginning of the running of the PSLRA clock," *i.e.*, Mr. Passmore's complaint, not the complaint Mr. Bender and Mr. Masri

---

[5] *See Gutman v. Sillerman*, 2015 WL 13791788, at *3 (S.D.N.Y. Dec. 8, 2015) ("where there are multiple complaints . . . clause (ii) makes it clear that the first-filed complaint is 'the complaint'– [and] . . . [a]ny subsequently-filed complaints are irrelevant for lead plaintiff purposes"); *Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at *6 (D.N.J. Apr. 14, 2020) ("'The PSLRA does not say that lead plaintiff status can be obtained by filing either a timely motion or 'a complaint'; it says that lead plaintiff status can be obtained either by filing a timely motion or '***the*** complaint.' The choice of article makes a huge difference. As a simple matter of English syntax, only one complaint can qualify as 'the complaint' – the article 'the' specifies one particular thing when followed by a singular noun. . . . As used in the PSLRA, 'the complaint' is the first complaint filed in a federal court – the one that starts the clock running on the 20[-]day period for filing notice to the putative class members.") (quoting *Gutman*, 2015 WL 13791788, at *2). Importantly, Mr. Bender and Mr. Misri acknowledge that "the" complaint for PSLRA purposes is the *Passmore* complaint filed in this Court. *See* ECF 29-1 at 8.

4881-0197-6685.v1

filed in a different jurisdiction on the same day the statutory deadline expired.[6]

*Gutman*, 2015 WL 13791788, at *2. The notice in this case was published by Mr. Passmore's counsel on April 13, 2023, informing class members of the precise case name, case number and district of the first-filled action triggering the undisputed June 12, 2023 deadline. *See* ECF 21-2 ("Captioned *Passmore v. Vertex Energy, Inc.,* No. 23-cv-00128 (S.D. Ala.), the *Vertex Energy* class action lawsuit charges Vertex Energy and certain of its top executives with violations of the Securities Exchange Act of 1934. . . . Lead plaintiff motions for the *Vertex Energy* class action lawsuit must be filed with the court no later than June 12, 2023."). In fact, Mr. Bender and Mr. Misri's motion filed in Texas informed that court that "[o]n April 13, 2023, the action

---

[6] Filing a complaint in a new jurisdiction just hours before the lead plaintiff deadline expires without informing the court in the first-filed case or the rest of the putative class of the filing of the new case in a new jurisdiction is somewhat of a signature ploy for Mr. Bender and Mr. Misri's counsel. Indeed, on the same day that counsel filed a complaint against Vertex in the Southern District of Texas (instead of a complaint or lead plaintiff motion in this Court), counsel also filed a follow-on securities class action complaint against a different company in the Northern District of New York just hours before the lead plaintiff deadline expired in *that* case instead of filing a lead plaintiff motion as the other seven class members seeking appointment did in the District of Delaware (the low-numbered court). *See, e.g., Melton v. Plug Power Inc.*, No. 1:23-cv-00409 (D. Del.); *Stewart v. Plug Power Inc.*, No. 1:23-cv-00704 (N.D.N.Y.). Regardless of whether the tactical impetus was designed to elicit some sort of "last mover" advantage or avoid the need to retain local counsel in a district where securities class actions are less commonly initiated, one thing is clear: "A principal purpose of the PSLRA was to prevent just the kind of gamesmanship in which [Mr. Bender, Mr. Misri,] and its counsel have engaged here, by putting everyone who wanted lead plaintiff status on an equal footing, with a decision to be made on the merits and under a strict timetable." *Gutman*, 2015 WL 13791788, at *3.

- 13 -

4881-0197-6685.v1

*Passmore v. Vertex Energy Inc.*, *et al.*, Case No. 1:23-cv-00128-N was filed" and

"[t]hat same day, a PSLRA early notice was issued advising potential class members

of, among other things, the claims alleged in the action, the Class Period, and the 60-

day deadline for class members to move to be appointed as lead plaintiff," attaching

Mr. Passmore's notice. *See* ECF 29-1 at 8-9. Moreover, Mr. Bender and Mr. Misri's

counsel's own website informed investors that "[a] class action lawsuit has already

been filed" and the relevant court in which motions must be filed was ***this*** Court "no

later than June 12, 2023."[7] It therefore defies logic that Mr. Bender and Mr. Misri's

counsel could nonetheless conclude that a complaint or a motion filed in a court

different from the one identified in the statutory notice ***they concede*** established the

PSLRA deadline could possibly qualify as sufficient.

In fact, as Judge O'Malley of the Southern District of Ohio recognized in a

seminal decision directly on point here, the "***PSLRA is unequivocal and allows for no***

***exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the***

***published notice for the first-filed action***." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp.

2d 803, 818 (N.D. Ohio 1999); *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at \*5

(S.D. Fla. Apr. 18, 2008) ("courts have held that the sixty (60) day filing deadline is a

---

[7]   *See* https://rosenlegal.com/case/vertex-energy-inc/ (last visited June 30, 2023)
(informing investors that the action was pending in this Court and providing a draft
complaint styled for filing in this Court).

- 14 -

hard-and-fast rule with no room for subsequent supplementation or modification"). [8]

Mr. Bender and Mr. Misri's motion cannot now be considered as the "plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed." *Telxon*, 67 F. Supp. 2d at 818 (emphasis in original). [9]

For whatever reason, Mr. Bender and Mr. Misri's counsel affirmatively chose *not* to submit a motion – timely or untimely – in *this* case (which they admit they were on notice of) contrary to the Federal Rules of Civil Procedure and the PSLRA's

---

[8]   *Telxon*'s holding on this point has been universally and widely adopted. *See In re CenturyLink Sales Pracs. & Sec. Litig.*, 2018 WL 1902725, at \*5 (D. Minn. Apr. 20, 2018) (quoting *Telxon* and finding lead plaintiff motion filed four months after statutory deadline "time-barred"); *Oklahoma Law Enf't Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at \*3 (E.D. Tex. Aug. 31, 2017) (quoting *Telxon* and finding motion late because it was filed after lead plaintiff motion deadline expired, despite the fact that additional events occurred after the notice was published); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 619 (S.D.N.Y. 2015) (quoting *Telxon* and declining to consider new allegations filed after statutory deadline expired); *Darwin v. Taylor*, 2012 WL 5250400, at \*5-\*6 (D. Colo. Oct. 23, 2012) (same); *Stone v. Life Partners Holdings, Inc.*, 2011 WL 13237569, at \*4 (W.D. Tex. Aug. 12, 2011) (same); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 410-11 (S.D.N.Y. 2004) (same).

[9]   Mr. Bender and Mr. Misri's separate failure to certify that they authorized the filing of the complaint lodged on their behalf in the Southern District of Texas – as the PSLRA requires – calls into question whether and when they became aware that a complaint would be filed in their names in the Southern District of Texas (as opposed to lead plaintiff motions in this District). 15 U.S.C. §78u-4(a)(2)(A) ("Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that – (i) *states that the plaintiff has reviewed the complaint and authorized its filing* . . . .").

- 15 -

threshold requirement. This is not a situation in which Mr. Bender and Mr. Misri's unorthodox request came a few hours or even a day late due to understandable technical or logistical issues. To the contrary, ***any motion filed now would be 18 days late***. Nor have they provided any explanation for failing to meet the PSLRA's most basic and express requirement for appointment as lead plaintiff. Consequently, their improper request should be denied.

### C. Only Mr. Passmore Qualifies for Appointment as Lead Plaintiff

Because the two sets of class members who claim a larger financial interest either do not satisfy the PSLRA's requirements or are not properly before the Court (or both, as in the case of Mr. Bender and Mr. Misri), the Court must "repeat this process until a presumptive lead plaintiff is identified." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). Mr. Passmore is that movant.

Aside from having the largest financial interest of any qualified movant, the PSLRA requires that, to be designated the presumptively most adequate plaintiff, Mr. Passmore must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). There is no question that Mr. Passmore satisfies these requirements. *See* ECF 21 at 6-8; ECF 21-5. Indeed, "other than pointing out its relatively low[er] financial stake in the litigation," it is unlikely that the other movants will make any argument against Mr. Passmore's appointment. *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008) (disqualifying three

- 16 -

artificial groups with combined financial interests between $155,000 and $300,000 and appointing single movant with $28,800 loss despite the fact that it did not suffer the greatest financial interest because it "is the first [movant] to meet [the PSLRA's] standards").[10]

Mr. Passmore, a resident of Silverhill, purchased over 5,000 shares of Vertex stock during the Class Period and held those shares through the end of the Class Period. Mr. Passmore has already taken steps to protect the interests of the putative class by filing the first complaint in this case and proposing lead counsel that has obtained the largest PSLRA class action recovery in Eleventh Circuit history in *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery). Moreover, Mr. Passmore has provided the Court with a Declaration setting forth his ability and willingness to serve as a lead plaintiff, his role as the owner of Passmore Outdoors, Inc. (a local business located within this District), his familiarity and prior experience working with counsel, and his understanding of lead plaintiff duties. *See* ECF 21-5. Mr. Passmore is the exact type of judicious and diligent lead plaintiff envisioned by the PSLRA.

---

[10] *See Stitch Fix*, 393 F. Supp. 3d at 836 (disqualifying three movants, including two artificial groups claiming losses up to $755,721, declining to disaggregate groups, and instead appointing fourth place individual investor with $115,380 claimed loss, agreeing that "he is essentially the last man standing" and "'the only movant that meets all of the PSLRA's requirements'").

- 17 -

**D.      Mr. Passmore's First-Filed Action Should Be Consolidated with the *Levson* Action**

As recognized by the Court in its June 14, 2023 Order, both movants agree that consolidation of Mr. Passmore's first-filed case (*Passmore v. Vertex Energy, Inc.*, No. 1:23-cv-00128) together with the follow-on action, *Levson v. Vertex Energy, Inc.*, No. 1:23-cv-00197, is appropriate.

The PSLRA requires district courts to resolve consolidation before appointing a lead plaintiff in securities cases. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). Under Rule 42(a), consolidation is appropriate when actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a). This Court has broad discretion to consolidate cases pending within its district. *See Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 765 (11th Cir. 1995).

The *Levson* complaint is an almost verbatim copy of Mr. Passmore's complaint. The *Levson* action alleges identical claims under §10(b) and §20(a) of the Securities Exchange Act of 1934 against identical defendants in an identical class period. "Consolidation of shareholder class actions is recognized as benefitting the court and the parties by expediting pretrial proceedings, reducing case duplication, and minimizing the expenditure of time and money by all persons concerned." *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 501-02 (S.D. Fla. 2002) (finding that securities class action complaints presenting "virtually identical claims for relief based upon a

- 18 -

single course of conduct during the Class Period" are "ideally situated for consolidation"). Accordingly, the actions should be consolidated.

## III. CONCLUSION

Mr. Marti and Mr. Zeman cannot be appointed as lead plaintiff because their financial interest is entirely comprised of atypical options transactions, which precludes their ability to satisfy the Rule 23 requirements. Nor can Mr. Bender and Mr. Misri be appointed to lead this case given that they have still not filed a motion with this Court in violation of the Federal Rules of Civil Procedure, this Court's Local Rules, as well as the mandatory PSLRA deadline. As such, Mr. Passmore respectfully requests that the Court consolidate the related actions, deny the competing motion (and the relief requested in Mr. Bender and Mr. Misri's notice), and grant his motion.

DATED: June 30, 2023

Respectfully submitted,

JACKSON & FOSTER, LLC
SIDNEY W. JACKSON III


s/ Sidney W. Jackson III
SIDNEY W. JACKSON III

75 St. Michael Street
Mobile, AL 36602
Telephone: 251/433-6699
251/433-6127 (fax)

4881-0197-6685.v1

- 19 -

ROGER BEDFORD, ATTORNEY AT
  LAW, LLC
ROGER H. BEDFORD, JR.
P.O. Box 1149
Russellville, AL  35653
Telephone:  256/332-6966
265/332-6967 (fax)

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
DARRYL J. ALVARADO
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Proposed Lead Counsel for Proposed Lead
Plaintiff

- 20 -