# EXHIBIT B

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM C. PASSMORE, Individually and on Behalf of All Others Similarly Situated, <br><br>         Plaintiff, <br><br>    vs. <br><br> VERTEX ENERGY, INC., BENJAMIN P. COWART, and CHRIS CARLSON, <br><br>         Defendants. | Civil Action No. <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br><br><br><br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff William C. Passmore ("plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters based on the investigation undertaken by counsel, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Vertex Energy, Inc. ("Vertex" or the "Company"), Company press releases, conference call transcripts, and media reports about the Company.  Plaintiff believes substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.[1]

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all persons who purchased or otherwise acquired Vertex securities between April 1, 2022 and August 8, 2022, inclusive (the "Class Period"), against Vertex and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     Jurisdiction is conferred by §27 of the Exchange Act, 15 U.S.C. §78aa. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15

---

[1]     Emphasis has been added unless stated otherwise.

U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

3. Venue is proper here pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) because the Company conducts business in this District, and the events and omissions giving rise to the claims asserted herein occurred in substantial part in this District, including the dissemination of false and misleading statements in this District.

4. In connection with the acts alleged herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

5. Plaintiff William C. Passmore, as set forth in the accompanying certification, which is incorporated by reference herein, purchased and acquired Vertex securities during the Class Period and was damaged thereby.

6. Defendant Vertex is an energy company focused on the production and distribution of conventional and alternative fuels. Vertex's primary operations are located in Mobile, Alabama, where it owns and operates a 91,000 barrel-per-day refinery, and engages in the supply, marketing, and trading of feedstocks and products to support the Company's operations. Vertex common stock trades in New

- 2 -

York City on The NASDAQ Stock Market LLC ("Nasdaq") under ticker symbol "VTNR."

7. Defendant Benjamin P. Cowart ("Cowart") served as Chief Executive Officer ("CEO") and Chairman of the Board of Directors of Vertex (the "Board") throughout the Class Period.

8. Defendant Chris Carlson ("Carlson") served as Chief Financial Officer ("CFO") of Vertex throughout the Class Period.

9. Defendants Cowart and Carlson are collectively referred to herein as the "Individual Defendants." Vertex and the Individual Defendants are collectively referred to herein as "defendants."

10. Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, services, competition, sales, and present and future business prospects. In addition, the Individual Defendants were involved in drafting, producing, reviewing, and disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

- 3 -

11. As officers and controlling persons of a publicly held company whose securities are registered with the SEC pursuant to the Exchange Act and traded on the Nasdaq, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate, truthful, and complete information with respect to the Company's operations, business, services, markets, competition, and present and future business prospects. In addition, the Individual Defendants each had a duty to correct any previously issued statements that were materially misleading or untrue, so that the market price of the Company's publicly traded shares would be based upon truthful, accurate, and complete information. Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12. The Individual Defendants, because of their positions of control and authority as officers and directors of the Company, were able to, and did, control the contents of various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be false and misleading before or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Individual

Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

## SUBSTANTIVE ALLEGATIONS

13.     Founder and CEO Cowart established Vertex in Houston, Texas in 2001.  Prior to the start of the Class Period, Vertex's primary business involved the collection and processing of used motor oil.  In early 2021, Vertex announced that it had reached an agreement to acquire an oil refinery located in Mobile, Alabama from Shell Oil.  The refinery was viewed as a "transformative" acquisition for Vertex, expected to significantly increase the Company's projected annual revenues, from $115 million in fiscal year 2021 to a projected $4 billion in fiscal year 2023. A key component of the acquisition was Vertex's plan to convert a portion of the refinery's 91,000 barrel-per-day output to renewable diesel fuel, which was expected to generate higher profits than the refinery's conventional gasoline and diesel fuel outputs.  The acquisition of the Mobile refinery acquisition was expected to close in early 2022.

14.     During the remainder of 2021, Vertex secured financing to cover the significant cost of the acquisition, which included $75 million for the refinery itself, and over $150 million for crude oil feedstock and refined fuel inventory that would be transferred to Vertex as part of the acquisition.  This financing included a $155 million convertible notes offering issued in November 2021 and a $125 million term

- 5 -

loan signed in April 2022. The financing arrangements, which represented a significant increase to Vertex's total debt load, were expected to be funded by profits from the Mobile refinery.

15. To successfully operate the Mobile refinery, Vertex, like other oil refiners, would be required to procure raw crude oil from suppliers, process it into finished products such as gasoline, diesel, and jet fuel, and sell the finished products to distributors who would then sell the products to end users. The difference between the prices at which Vertex acquired crude oil inventory and the prices at which it sold the finished products inventory is known in the refining industry as the "crack spread." Crack spreads, which fluctuate over time based on domestic and global oil prices, are widely viewed by analysts and investors as the key component of potential profits for oil refiners like Vertex.

16. Historically, refiner crack spreads have been below $20 per barrel, but in early 2022, following the conflict in Ukraine, global oil markets experienced severe disruption and crack spreads began to rise. This timing coincided with Vertex's acquisition of the Mobile refinery, which had been first announced in early 2021, when crack spreads were significantly lower. As a result of the rising crack spreads, analysts and investors increased their profit forecasts for the Mobile refinery on the expectation that the refinery would be able to capitalize on higher profit margins on each barrel of fuel Vertex produced. However, unbeknownst to

- 6 -

investors, immediately prior to the closing of the Mobile acquisition, defendants had entered into, or were a party to, a series of transactions that dramatically capped the new plant's profitability and would, in fact, lead to significant losses immediately following the acquisition. These transactions, which in some instances were required pursuant to the financing arrangements Vertex had entered into, resulted in over $125 million in losses during the Class Period.

17. The Class Period begins on April 1, 2022, the date Vertex completed the purchase of the Mobile refinery. On that date, Vertex filed with the SEC a Form 8-K that included a press release with the headline "Vertex Energy Completes Acquisition of Mobile Refinery." The press release stated, in pertinent part:

> Vertex Energy, Inc. ("Vertex" or the "Company"), a leading specialty refiner and marketer of high-quality refined products today announced the completion of the previously announced acquisition of the Mobile, Alabama refinery and related marine terminal and logistics assets from Equilon Enterprises LLC d/b/a Shell Oil Products US ("Shell"), Shell USA, Inc. and Shell Chemical LP for a base purchase price of $75 million in cash, together with approximately $25 million related to specified capital expenditures and other closing adjustments. At closing, Vertex acquired approximately $165 million in hydrocarbon inventory from Shell that was financed through an intermediation agreement arranged by Vertex.
>
> *          *          *
>
> "**As we look out to the remainder of 2022, we expect refined product margins on conventional fuels production at the Mobile refinery to remain at elevated levels**, given strong regional demand conditions, while our legacy assets continue to benefit from favorable product spreads," continued Cowart. "Entering 2023, we intend to layer on the financial benefit of renewable diesel fuel production which,

- 7 -

given current commodity prices and credit values, will position us to deliver significant value to our shareholders."

18. On May 10, 2022, 40 days into owning and operating the Mobile refinery, Vertex filed with the SEC a Form 8-K that included its first quarter 2022 earnings release. On the same day, Vertex held an earnings conference call for analysts and investors (the "Q1 earnings call"). Defendants Cowart and Carlson gave prepared remarks and answered analyst questions on the Q1 earnings call. During the Q1 earnings call, defendant Cowart emphasized that the Mobile refinery was off to a strong start, stating: "***During the first 30 days of operations, the refinery generated strong EBITDA***, all of which came from conventional fuel production." Cowart then surprised investors by affirming: "Putting the significance of this performance in perspective, we currently anticipate ***Vertex . . . [will] have generated enough cash flow to have paid for the Mobile refinery and related logistic assets in less than one full quarter of operations*** . . . ." Cowart also stated:

> I'd like to begin with an update on our recently acquired refinery in Mobile, Alabama. Exactly 40 days ago, Vertex assumed ownership of the Mobile refinery, signaling an entirely new chapter in the history of the company. This next chapter will be one during which you will see us build a leading platform focused on the development and acquisition of complementary energy transition assets with an emphasis on conventional and alternative fuels.
>
> We view the acquisition of the Mobile refinery as the first pivotal step in this multiyear transformation. Since assuming ownership of the Mobile refinery April 1, the transition of the refinery operations from shale to Vertex has been seamless with no impact on production levels or scheduled product deliveries. . . .

- 8 -

When we first evaluated the Mobile refinery as a potential acquisition target, our base acquisition case focused mainly on a hydrocracker conversion project.  Once completed, would allow us to produce high-valued renewable fuels.  Both then and now, this project remains a key cornerstone of our investment thesis, one with the potential to drive significant value creation in future years.

*However, what we didn't fully anticipate at that time was the value creation potential of the conventional fuels business, which today is more profitable than originally expected.  Conventional fuels refining economics have improved materially in the recent months* . . . .

Given the recent geopolitical events, this inventory situation is only expected to worsen, creating the potential for further widening in refined product margins.  Currently, *the Gulf Coast 312 crack spread and approximate gross profit per barrel benchmark for the Mobile refinery is more than $48 per barrel* versus the 5-year average of $13 per barrel.

*Even more importantly, the Gulf Coast distillate crack is currently north of $70 per barrel* versus a 5-year average of $15 per barrel.  *Given that approximate 2/3 of the Mobile refinery's current product slate is distillate, we are uniquely positioned to capitalize on current refined product economics*.  Further, with no refined product pipeline, feeding the region, our refinery remains the primary source of fuels to these local markets.

19.  On the Q1 earnings call, Cowart revealed Vertex's hedging program for the first time and assured investors that the hedges were working effectively.

Cowart stated:

Concurrent with our acquisition of the Mobile refinery, we entered into a crack spread hedging program, representing approximately 50% of our anticipated production for the period between April 1 and September 30, 2022.  For the 6-month period, we've locked in an average crack spread hedge at a level approximately 25% above the trailing 5-year average 312 crack spread.

- 9 -

*This hedge program, which is intended to secure elevated product margins and a favorable spread environment is expected to significantly derisk anticipated margin capture for the full year 2022, while still providing the spot market exposure on the other half of our production*.

\* \* \*

*Very pleased with our – what we've accomplished for the first 6 months*.  And again, that speaks to our relationship on our working capital side of the business and our partner – our banking partners that have provided a hedging vehicle this credit backed in order to be able to take those kind of positions without draining cash and liquidity at the company.

20.    On the Q1 earnings call, defendant Carlson provided strong financial guidance for the second quarter and fiscal year 2022:

We have provided full year financial guidance for the full year 2022 and 2023, including anticipated contributions from the Mobile refinery completed on April 1, 2022.  Together with the implied net cash impact of hedges currently in place on approximately 50% of the Mobile refinery's production in the second and third quarter of 2022.

All guidance is current as of the time provided and is subject to change.

For the full year 2022, Vertex anticipates gross profit in a range of $440 million to $460 million, adjusted net income in the range of $235 million to $255 million, and adjusted EBITDA in a range of $340 million to $360 million, free cash flow in a range of $150 million to $175 million.

21.    On the same day, Vertex also filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2022 (the "Q1 Form 10-Q").  The Q1 Form 10-Q was signed by defendants Cowart and Carlson.  The Q1 Form 10-Q failed

- 10 -

to disclose the extensive losses Vertex had incurred at the Mobile refinery following the April 1, 2022 acquisition.

22. Defendants' representations about the Mobile refinery, referenced above in ¶¶17-21, were each false and misleading when made or omitted information necessary to make the statements not misleading. The true facts, which were then known to or recklessly disregarded by defendants, included:

(a) prior to the acquisition of the Mobile refinery, defendants had entered into inventory and crack spread hedging derivatives that significantly capped the profit margins on 50% of the Mobile refinery's expected output over the period April 1, 2022 to September 30, 2022, affecting over 6.5 million barrels of refined fuel output. These hedges severely limited Vertex's ability to capitalize on the record-high crack spreads that existed at the time of the acquisition and resulted in over $90 million in losses in the second quarter of fiscal year 2022;

(b) prior to the acquisition of the Mobile refinery, defendants had entered into an inventory intermediation agreement with the investment bank Macquarie Group, whereby Macquarie purchased (from third parties), owned, and sold (to Vertex) all crude oil inventory to be used at the Mobile refinery and also purchased (from Vertex), owned, and sold (to third parties) all refined fuel inventory produced at the Mobile refinery. The strict terms of the arrangement, including requiring Vertex to purchase hedges to protect Macquarie's position in holding the

- 11 -

crude and refined inventory, combined with the fact that the oil market was in a state of backwardation in early 2022, resulted in Vertex incurring significant fees and inventory losses. The losses, which began as of the April 1, 2022 acquisition date, totaled $23 million during the second quarter of fiscal year 2022;

(c)    prior to the acquisition of the Mobile refinery, defendants had entered into an inventory purchase agreement with Shell Oil as part of the Mobile acquisition agreement. Vertex had anticipated purchasing approximately $100 million of crude oil and refined fuel inventory. Immediately prior to the closing of the acquisition, Vertex learned that pursuant to the terms of the purchase agreement, it would be required to purchase substantially more inventory from Shell Oil, totaling $164 million. Due to the state of backwardation in the oil market, Vertex was forced to pay Shell Oil above-market prices for the additional crude oil inventory. The additional Shell Oil inventory purchase triggered $13.3 million in inventory losses at or around the time of the acquisition;

(d)    immediately following the acquisition of the Mobile refinery, Vertex experienced production issues that caused significant shortfalls in refined fuel volumes. The production issues resulted in $8 million of lost profits during the second quarter of fiscal year 2022;

(e)    following the acquisition of the Mobile refinery, defendants overstated the purported profit margins that could be achieved at the refinery.

- 12 -

Defendants represented that the "3-2-1 crack spread" was the appropriate benchmark for the Mobile refinery; however it was later revealed that the "2-1-1 crack spread," which resulted in lower profits per barrel of production, was the more accurate profit benchmark for the Mobile refinery; and

(f)     as a result of the above misrepresentations and concealed facts, the Mobile refinery did not "generate[] strong EBITDA]" "[d]uring the first 30 days of operations," and the Mobile refinery transition was not "seamless."

23.     Then, on August 9, 2022, before the market opened, Vertex filed with the SEC a Form 8-K that included its second quarter 2022 earnings release, and held an earnings conference call for analysts and investors (the "Q2 earnings call").  In the earnings release, and on the call, Vertex disclosed the massive losses incurred at the Mobile refinery during the second quarter of 2022.  Vertex announced a net loss for the Company of $63.8 million.  Vertex also announced that adjusted EBITDA for the Mobile refinery, even after adjusting for certain incurred losses, was only $63.6 million, compared to the guidance given just three months prior for EBITDA of $120-$130 million in the second quarter, a total shortfall of 50%.  Vertex also withdrew its financial guidance for the remainder of fiscal year 2022 and fiscal year 2023.

24.     In response to this news, the price of Vertex common stock collapsed by $6.18 per share, or 44%, on August 9, 2022, on abnormally high trading volume

of more than 27 million shares traded. The share price continued to fall in subsequent days as the market digested the news, reaching a low of just $7.05 per share on August 11, 2022, roughly 50% below the closing price on August 8, 2022, and over 60% lower than the Class Period high of $18.10 per share in June 2022.

25. As a result of defendants' wrongful acts and omissions, and the declines in the market value of Vertex securities, plaintiff and other Class members (defined below) have suffered significant losses and damages for which they seek redress through this action.

**ADDITIONAL SCIENTER ALLEGATIONS**

26. As alleged herein, defendants acted with scienter in that defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of the Company, or in their own name, during the Class Period were materially false and misleading.

27. The Individual Defendants, because of their positions with Vertex, controlled the contents of Vertex's public statements during the Class Period. The Individual Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected. Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts

specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, each of the defendants is responsible for the accuracy of Vertex's corporate statements and is, therefore, responsible and liable for the representations contained therein.

## NO SAFE HARBOR

28.    The "Safe Harbor" warnings accompanying Vertex's reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.  Defendants are also liable for any false or misleading FLS pled because, at the time each FLS was made, the speaker knew the FLS was false or misleading, and the FLS was authorized and approved by an executive officer of Vertex who knew the FLS was false.  None of the historic or present tense statements made by defendants was an assumption underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made; nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

29.     Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against defendants are predicated upon omissions of material fact for which there was a duty to disclose.

30.     Plaintiff and the Class are also entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and the fraud-on-the-market doctrine because the market for Vertex securities was an efficient market at all relevant times by virtue of the following factors, among others:

(a)     Vertex common stock met the requirements for listing and was listed and actively traded on the Nasdaq, a highly efficient market;

(b)     Vertex regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(c)     Vertex was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms.  These reports were publicly available and entered the public marketplace.

- 16 -

31.     As a result of the foregoing, the market for Vertex securities promptly incorporated current information regarding the Company from publicly available sources and reflected such information in the prices of Vertex securities.  Under these circumstances, all those who transacted in Vertex securities during the Class Period suffered similar injury through their transactions in Vertex securities at artificially inflated prices, and a presumption of reliance applies.

32.     Without knowledge of the misrepresented or omitted material facts, plaintiff and other Class members purchased or acquired Vertex securities between the time defendants misrepresented and failed to disclose material facts and the time the facts were disclosed.  Accordingly, plaintiff and other Class members relied, and are entitled to have relied, upon the integrity of the market prices for Vertex securities and are entitled to a presumption of reliance on defendants' materially false and misleading statements and omissions during the Class Period.

## LOSS CAUSATION/ECONOMIC LOSS

33.     During the Class Period, as detailed herein, defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Vertex securities by misrepresenting the value of the Company's business and prospects.  As defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of Vertex securities fell precipitously as the prior artificial inflation came out of the

- 17 -

price of the securities. As a result of their purchases of Vertex securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

34. The market for Vertex securities was open, well developed, and efficient at all relevant times. Throughout the Class Period, Vertex securities traded at artificially inflated prices as a direct result of defendants' materially misleading statements and omissions of material fact, which were widely disseminated to the securities market, investment analysts, and the investing public. Plaintiff and other members of the Class purchased or otherwise acquired Vertex securities, relying upon the integrity of the market price for Vertex securities and market information relating to Vertex, and they have been damaged thereby.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class consisting of all purchasers of Vertex securities during the Class Period. Excluded from the Class are defendants and members of their immediate families; the officers and directors of the Company at all relevant times and members of their immediate families; the legal representatives, heirs, successors, or assigns of any of the foregoing; and any entity in which defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Vertex common stock was actively traded on the Nasdaq.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes there are thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Vertex or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the Exchange Act was violated by defendants as alleged herein;

(b)     whether statements made by defendants misrepresented material facts about the business, operations, and management of Vertex;

(c)     whether defendants acted with scienter; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

41.     Plaintiff incorporates all of the preceding paragraphs by reference.

42.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew were or deliberately disregarded as misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43.     Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Vertex securities during the Class Period.

44.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Vertex securities. Plaintiff and the Class would not have purchased Vertex securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the Exchange Act
### Against All Defendants

45.     Plaintiff incorporates all of the preceding paragraphs by reference.

46.     The Individual Defendants acted as controlling persons of Vertex within the meaning of §20(a) of the Exchange Act.  By reason of their positions with the Company, the Individual Defendants had the power and authority to cause Vertex to engage in the wrongful conduct complained of herein and were culpable participants in the fraudulent scheme, as alleged herein.  Vertex controlled the

Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and as Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other members of the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees; and

D.     Awarding such equitable and injunctive or other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED:  April 13, 2023

JACKSON & FOSTER, LLC
SIDNEY W. JACKSON III


s/ Sidney W. Jackson III
SIDNEY W. JACKSON III

75 St. Michael Street
Mobile, AL  36602
Telephone: 251/433-6699

ROGER BEDFORD, ATTORNEY AT
  LAW, LLC
ROGER H. BEDFORD, JR.
P.O. Box 1149
Russellville, AL  35653
Telephone:  256/332-6966

Local Counsel for Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARRYL J. ALVARADO
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff