United States District Court
Southern District of Texas
**ENTERED**
February 06, 2024
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ERIC BENDER and NADER MISRI, individually and on behalf of all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. H-23-2145 |
| v. | § § | CONSOLIDATED WITH: |
| VERTEX ENERGY, INC., et al., | § § | 4-24-cv-290 |
| Defendants. | § § | 4-24-cv-291 |

### MEMORANDUM AND OPINION

The path of a securities fraud class action is neither easy nor short. Too often, as here, consideration of the merits can languish while the lawyers vie for leadership positions in the structure appointed to manage such complex cases. This putative securities fraud class action is no exception. The good news is that with the resolution of at least this threshold issue, the litigation timetable may move more quickly.

There are three competing motions for appointment as lead plaintiff. This now-consolidated action began as three. William C. Passmore filed the first complaint in the Southern District of Alabama. *Passmore v. Vertex Energy, Inc., et al.*, Civ. Act. No. 1:23-cv-128-TFM (S.D. Ala.). Phil Levson filed a second complaint in the same court. *Levson v. Vertex Energy, Inc., et al.*, Civ. Act. No. 1:23-cv-197-KD-N (S.D. Ala.). Then Eric Bender and Nader Misri filed in this court. The Southern District of Alabama ordered the cases consolidated and transferred here. The question is whether Bender and Misri are ineligible for appointment as lead plaintiffs because they did not file a timely motion in the first filed *Passmore* action, but instead moved this court for appointment in the action they filed before the cases were consolidated and transferred here. Based on the record, the briefs, and the applicable law, the court concludes that Bender and

Misri are eligible for, and entitled to, appointment because they are the most adequate plaintiffs, and the timing of their motions does not disqualify them.   Bender and Misri's motion for appointment as lead plaintiffs and for approval of their selection of counsel is granted.  (Docket Entry No. 50 [24-290]).   The competing motions for appointment are denied.  (Docket Entry Nos. 21, 23 [24-290]).   The reasons are explained below.

## I.   Background

The putative class action plaintiffs allege that the defendants, Vertex Energy, Inc. and two of its executive officers, made material misrepresentations and omissions about Vertex's legal and financial position following the purchase of an oil refinery in Mobile, Alabama.   The plaintiffs assert violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and its implementing regulation, Rule 10b–5.   The plaintiffs sue on behalf of a putative class of members who purchased Vertex securities after the alleged misrepresentations and suffered financial loss when the truth was revealed, causing a decrease in Vertex's stock price.

Passmore was the first to sue.   On the day he filed his complaint, April 13, 2023, his counsel published the notice required by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(a)(3)(A).   (Docket Entry No. 21-2 [24-290]).   The notice advised that a class action lawsuit against Vertex had been filed in the Southern District of Alabama and that "[l]ead plaintiff motions for the *Vertex Energy* class action must be filed with the court no later than June 12, 2023." (*Id.*).

On May 26, 2023, Levson filed a separate action in the Southern District of Alabama, asserting the same claims against the same defendants on behalf of the same putative class. (Docket Entry No. 1 [24-291]).

On June 12, 2023—the deadline for lead-plaintiff motions—Bender and Misri filed suit in this court, with allegations substantially identical to those in the Alabama actions.  (Docket Entry

No. 1 [23-2145]).  On the same day, Passmore moved for appointment as lead plaintiff in the Alabama actions, and for consolidation of the Alabama actions.  (Docket Entry No. 21 [24-290]); Docket Entry No. 9 [24-291]).  So did a group of two other putative class members, Guillermo Marti and Frank J. Zeman.  (Docket Entry No. 23 [24-290]; Docket Entry No. 11 [24-291]).  Bender and Misri, also on the same day, moved for appointment as lead plaintiffs in their case before this court, but not in the Alabama actions.  (Docket Entry Nos. 3, 4 [23-2145]).  It is undisputed that Bender and Misri knew of at least the *Passmore* action, because they attached the § 78u–4(a)(3)(A) notice to their motion for appointment.  (Docket Entry No. 4-1 [24-2145]).

On June 26, 2023, Bender and Misri filed in the Alabama actions a "notice" that they had, in the Texas action, "timely filed a motion for an order pursuant to Section 21D of the Securities Exchange Act of 1934 . . . for appointment as Lead Plaintiffs and for approval of their selection of counsel."  (Docket Entry No. 29 at 1–2 [24-290]).  Bender and Misri attached the motion for appointment to their "notice" and "incorporated [it] [] by reference."  (*Id.* at 2).  Bender and Misri acknowledged in their notice that "[i]t is the Notice of Pendency in the initial case that triggers the sixty-day filing deadline for investors seeking to serve as lead plaintiff."  (*Id.*).  The notice concluded with a request for the Southern District of Alabama to "consider the attached Motion." (*Id.*).

A few days later, Passmore, Marti, and Zeman moved to intervene in the Texas action. (Docket Entry Nos. 9, 13 [23-2145]).  Marti and Zeman also moved this court to stay the Texas action pending the resolution of their motions in Alabama.  (Docket Entry No. 9 [23-2145]).  Marti and Zeman also responded to Bender and Misri's motion for appointment, arguing that the Texas action was "filed purely in an improper, eleventh-hour effort to circumvent the orderly lead plaintiff appointment process set forth in the Private Securities Litigation Reform Act of 1995 []

3

and gain some improper procedural advantage in this litigation." (Docket Entry No. 11 [23-2145]).
Passmore made similar arguments in his motion to intervene.  (Docket Entry No. 13 [23-2145]).

On July 20, 2023, this court issued the following order: "As Passmore is the first filed case,
the issue of consolidation and related appointments of lead plaintiffs and lead counsel are hereby
REFERRED to United States District Judge Terry F. Moorer, Southern District of Alabama, for
resolution."  (Docket Entry No. 27 [23-2145]).   The next day, Bender and Misri moved the
Alabama courts for appointment as lead plaintiffs and for approval of their counsel.  (Docket Entry
No. 50 [24-290]; Docket Entry No. 35 [24-291]).   Bender and Misri explained: "Given that
Movants' June 26, 2023, notice did not seek appointment of liaison counsel and that issues relating
to consolidation, Lead Plaintiff and Lead Counsel have been referred to this Court, Movants now
file this motion to supplement their prior notice of motion (Dkt. No. 29) and seeking appointment
of Cunningham Bounds as liaison counsel."  (Docket Entry No. 50 at 2 [24-290]).

Judge Moorer ordered the parties to brief the issue of venue.  (Docket Entry No. 52 [24-
290]).  Judge Moorer then ordered the three cases consolidated and transferred to this Texas court
under 28 U.S.C. § 1404(a), finding that "the Southern District of Texas is the more appropriate
location for this proposed class action."  (Docket Entry No. 68 at 20 [24-290]).  The motions for
appointment of lead plaintiffs and counsel remained.

## II.    The Legal Standard

Congress passed the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u *et
seq.*, to correct the "disproportionate influence lawyers have exerted over securities actions."
*Ravens v. Iftikar*, 174 F.R.D. 651, 653 (N.D. Cal. 1997), *on reconsideration* (July 16, 1997) (citing
Senate Rep. No. 104-98, 104th Cong., 1st Sess., 1996 U.S.C.C.A.N. 679).  The "overriding goal"
was to "transfer primary control of private securities litigation from lawyers to investors" and
"displace figurehead plaintiffs with real investors."  *Id.* at 653–54 (citing 1996 U.S.C.C.A.N. 679,

4

685).  The PSLRA amended Title I of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and Title I of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*  At issue here are the procedures the PSLRA prescribes, in § 78u–4(a)(3), for the appointment of lead plaintiffs and counsel in securities class actions.

The process begins with the following notice requirement:

**(A) Early notice to class members**

**(i) In general**

Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

**(I)** of the pendency of the action, the claims asserted therein, and the purported class period; and

**(II)** that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

**(ii) Multiple actions**

If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i).

**(iii) Additional notices may be required under Federal rules**

Notice required under clause (i) shall be in addition to any notice required pursuant to the Federal Rules of Civil Procedure.

§ 78u–4(a)(3)(A).

Section 78u–4(a)(3)(B) prescribes procedures and standards for the court in ruling on motions for appointment:

**(B) Appointment of lead plaintiff**

**(i) In general**

Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

**(ii) Consolidated actions**

If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph.

**(iii) Rebuttable presumption**

  **(I) In general**

  Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—

    **(aa)** has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

    **(bb)** in the determination of the court, has the largest financial interest in the relief sought by the class; and

    **(cc)** otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

  **(II) Rebuttal evidence**

  The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—

    **(aa)** will not fairly and adequately protect the interests of the class; or

    **(bb)** is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

    **(iv)** Discovery

6

For purposes of this subparagraph, discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.

### (v) Selection of lead counsel

The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.

### (vi) Restrictions on professional plaintiffs

Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

In sum, the court must determine who among the putative class is the "most capable of adequately representing the interests of class members"—the "most adequate plaintiff." § 78u–4(a)(3)(B)(i).  The court must presume that the most adequate plaintiff is the "person or group of persons" who meet each of the following criteria:

(1) filed the complaint or made a motion in response to a § 78u–4(a)(3)(A)(i) notice;

(2) has the largest financial interest in the relief sought by the class; and

(3) satisfies Rule 23's requirements.

This presumption may be rebutted only by "proof" from a putative class member that the presumptively most adequate plaintiff does not actually meet Rule 23's requirements, specifically typicality and adequacy.  The Rule 23 inquiry on a motion for appointment is not "as searching as the one triggered by a subsequent motion for class certification."  *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 441 (S.D. Tex. 2002).  A prospective lead plaintiff must make "a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members."  *Id.*

7

Section 78u–4(a)(3) implements the PSLRA's purposes in two ways relevant here. First, by connecting lead-plaintiff appointments to financial interest, the sections roughly ensure that the plaintiffs who represent the class will be the ones most likely to "manage the litigation and supervise the class action lawyers." *See Enron*, 206 F.R.D. at 442, 444 (recognizing the PSLRA's purpose of encouraging lead plaintiffs to "control [] the litigation" and "police counsel's conduct"); *see also In re Donnkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y.1997) (the PSLRA aims to "ensure that institutional plaintiffs with expertise in the securities market and real financial interest in the integrity of the market would control the litigation, not the lawyers"). Second, § 78u–4(a)(3)'s time limits—20 days after complaint to publish notice, 60 days after notice to move for appointment, and 90 days after notice for the court to consider motions for appointment—advance the purpose of "ensur[ing] that the lead plaintiff is appointed at the earliest possible time[] and [] expedit[ing] the lead plaintiff process." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999); *see also Stone v. Life Partners Holdings, Inc.*, No. DR-11-CV-16-AM, 2011 WL 13237569, at *3 (W.D. Tex. Aug. 12, 2011) (the PSLRA "was meant to have lead plaintiffs appointed as soon as practicable"); *Enron*, 206 F.R.D. at 439–40.

## III.   Analysis

There is no dispute that Bender and Misri have the largest financial interest in the relief sought by the class—by far. They claim a combined loss of $864,346.91. (Docket Entry No. 40 at 5 [24-290]). Marti and Zeman, by contrast, claim a combined loss of $66,591. (Docket Entry No. 23 at 7 [24-290]). Passmore claims a loss of $29,324.41. (Docket Entry No. 21 at 10 [24-290]). Bender and Misri are presumptively the most adequate plaintiffs and must be appointed lead plaintiffs if they: (1) either filed the complaint or made a motion in response to a § 78u–

4(a)(3)(A)(i) notice; and (2) satisfy the requirements of Rule 23.[1]  *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

Passmore, Marti, and Zeman (the "competing candidates") argue that Bender and Misri are not entitled to the presumption—or are, in their words, "ineligible for appointment"[2]—because they filed neither the complaint nor a timely motion in response to the notice published by Passmore's counsel.  Marti and Zeman also argue that Bender and Misri do not satisfy Rule 23's adequacy requirement because of their alleged "gamesmanship."  (Docket Entry No. 36 at 22 [24-290]).  Each argument is analyzed below.

### A.    Whether Bender and Misri "Filed the Complaint" or "Made a Motion"

To be entitled to the most-adequate-plaintiff presumption, a putative class member must have "either filed the complaint or made a motion in response to a notice under subparagraph (A)(i)."  § 78u–4(a)(3)(B)(iii)(I)(aa).  Bender and Misri do not argue that the complaint they filed in this court is "the complaint" within the meaning of this provision.  That argument would be unpersuasive because, when multiple complaints have been filed asserting the same class claims, "the complaint" is best interpreted as the complaint that initiated "the first filed action."  *See* § 78u–4(a)(3)(A)(ii); *Gutman v. Sillerman*, No. 15 CIV. 7192 (CM), 2015 WL 13791788, at *3 (S.D.N.Y. Dec. 8, 2015) ("[W]here there are multiple complaints (as there often are in securities fraud cases), clause (ii) makes it clear that the first-filed complaint is 'the complaint'—the one

---

[1]  Passmore, Marti, and Zeman have not offered any "proof" to rebut the presumption under § 78u–4(a)(3)(B)(iii).

[2]  Whether the alleged defect in Bender and Misri's application for appointment renders them "ineligible for appointment" or simply not entitled to the presumption is, it seems, an immaterial distinction.

whose filing triggers the beginning of all PSLRA time periods."); *accord Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at *6 (D.N.J. Apr. 14, 2020) ("Although Opus argues that 'the complaint' should be interpreted to mean any of the complaints that are eventually consolidated, the Court disagrees.").

Bender and Misri argue that the motion for appointment they filed in this court satisfies the eligibility requirement. (Docket Entry No. 40 at 13 [24-290]); Docket Entry No. 31 at 7 [24-290]). Alternatively, they argue that even if they failed to timely file a motion, the error should be excused. (Docket Entry No. 40 at 14 [24-290]). The competing candidates argue that Bender and Misri's motion was filed in the wrong court. They further argue that Bender and Misri's "notice," filed in the Alabama actions, is deficient because it is not a "motion" and was not filed within 60 days of the notice, as required by § 78u–4(a)(3)(A)(i)(II).

The competing candidates presume that motions for appointment as lead plaintiff, to be valid, must be filed in the first filed action. The candidates do not cite authority for this proposition, and they do not make an argument—at least not a thorough argument—from the statutory text. The statutory text does, however, provide some support for the position.

Notices under § 78u–4(a)(3)(A)(i) must inform putative class members of "the action," and one or more of those members "may move the court to serve as lead plaintiff of the purported class." "The action" that the putative members must be informed of is most naturally understood as the action the filing of which triggered the notice requirement. The most natural reading of "the court," then, is the court in which that action was filed.

But it does not necessarily follow that, when multiple class actions are filed involving the same claims, motions for appointment as lead plaintiff must be filed in the first filed action. Section 78u–4(a)(3)(A)(ii) provides that "only the plaintiff or the plaintiffs in the first filed action *shall be required* to cause notice to be published." § 78u–4(a)(3)(A)(ii) (emphasis added). The

section does not say that notice may not be published by plaintiffs in subsequently filed actions. Nor does it preclude the consideration of motions for appointment in subsequently filed actions.

Section 78u–4(a)(3)(B)(ii)'s procedure for consolidation mitigates some of the messiness—including delay and the risk of conflicting rulings—associated with motions for appointment filed in multiple courts. Subsection (a)(3)(B)(ii) prohibits a court from ruling on motions for appointment before resolving consolidation issues. This ensures that all motions for appointment, no matter where they were initially filed, are considered in a single case before a single judge.

For these reasons, the court is not persuaded that the PSLRA bars courts from considering motions for appointment as lead plaintiff filed in actions other than the first filed action, particularly where, as here, the actions have been consolidated, the motion was filed within 60 days of the notice, and the movant filed a notice of the motion in the first filed action.

But even if Bender and Misri's motion in this court does not satisfy the first element of the most-adequate-plaintiff presumption, the court is persuaded that the timing of Bender and Misri's motions in the Alabama actions is excusable. Bender and Misri filed a notice 12 days after the deadline for motions for appointment, requesting the Southern District of Alabama to "consider" their motion for appointment filed with this court. (Docket Entry No. 29 [24-290]). The competing candidates' argument that the notice is not a "motion" elevates form over substance. Bender and Misri attached the motion and memorandum as an exhibit and incorporated them as if fully set forth in the notice itself. Bender and Misri also filed a separate motion for appointment in the Alabama actions 39 days after the deadline. (Docket Entry No. 50 [24-290]).

The competing candidates cite caselaw—none binding—holding that the deadline for motions for appointment as lead plaintiff is "unequivocal and allows for no exceptions." *Telxon*, 67 F. Supp. 2d at 818; *see also Enron*, 206 F.R.D. at 439–40 ("The statute is unequivocal and

imposes precise time requirements; therefore all motions for appointment of Lead Plaintiff must be filed within sixty days of the published notice."); *Stone*, 2011 WL 13237569, at *4 ("[T]o . . . conclude that an untimely motion can be considered even if a satisfactory party punctually moved the court for lead plaintiff status is to blatantly ignore the statutorily-imposed sixty-day deadline and to improperly disregard the plain language of a binding federal statute.").

As Bender and Misri note, however, plenty of caselaw goes the other way. The court in *Montesano* thoroughly summarized the disagreement among district courts. 2020 WL 1873015. In *Montesano*, a movant for lead plaintiff, Opus, filed his motion 61 days after notice was published—one day too late. *Id.* at *6. Other movants argued that Opus's untimeliness made him ineligible for lead plaintiff. *Id.* The court considered "whether the PSLRA's 60-day window is mandatory." *Id.* It summarized the caselaw as follows:

> It appears that the general view is that the 60-day window is a strict deadline. For example, in *Skwortz v. Crayfish Co., Ltd.*, 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 28, 2001), the court interpreted the 60-day deadline as mandatory, and in doing so, refused to consider a motion that was filed one day late. The *Skwortz* court reasoned that the mandatory nature of the 60-day deadline flowed from the PSLRA itself, because "an untimely motion has the effect of preventing the proposed [g]roup from satisfying the first requirement of the most adequate plaintiff presumption." *Id*. The *Skwortz* court, however, reversed course after the excluded movant filed a motion for reconsideration, because the 60-day deadline fell on a state holiday – and pursuant to Fed. R. Civ. Pro. 6(a), that holiday was to be excluded from the 60-day window, thus extending the 60-day window one extra day and making the movant's motion timely. *See also Carson v. Clarent Corp.*, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001) ("The [movant] filed their motion [ ] more than two weeks too late. At least three courts have held that such a late filing, without a reasonable explanation, makes the class member ineligible to serve as lead plaintiff. At oral argument the [movant] did not try to justify their late filing; rather, they argued that given their large financial stake [ ] the Court should nonetheless appoint them lead plaintiff. The Court declines the [movant's] invitation to ignore the PSLRA's time requirements. The PSLRA does not have different filing deadlines based on the financial interest of the movant.") (internal citation omitted)).
>
> Moreover, in *In re Microstrategy Inc., Sec. Litig.*, the court explained that "[a] motion filed after the sixty-day period by a person who has not filed a complaint [ ] is untimely, and may not, except perhaps in rare circumstances, be considered by a court." 110 F. Supp. 2d 427, 433 (E.D. Va. 2000). The *Microstrategy* court

refused to consider a group who filed its motion after the 60-day deadline. *Id*. at 439. The court reasoned as follows:

> [E]ven assuming a district court may extend the relevant statutory deadline in certain circumstances, [the movant] has shown no good cause for doing so in this case: it has failed to provide a satisfactory explanation for why it did not file a timely motion to be named lead plaintiff. Other class members satisfied the statute's requirements, and [ ] convincing authority and Congress's intent suggest that the statute's time limits should be strictly enforced. *Id.* at 439-40.

Other courts agree that the 60-day window is mandatory. *See In re Able Laboratories Securities Litig.*, 425 F. Supp. 2d 562, 565-66 (D.N.J. 2006) (refusing to consider a movant's revised certification alleging a larger financial loss after the 60-day deadline had passed); *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (finding where movant failed to include a required certification with its initial timely motion, movant was not the "presumptively most adequate lead plaintiff"); *Switzenbaum v. Orbital Sciences Corp.*, 187 F.R.D. 246, 249-50 (E.D. Va. 1999) (ruling that a plaintiff, who movant attempted to add after sixty-day period, could neither be considered individually nor as part of the movant group that had filed a timely motion); *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc.*, 2017 WL 3780164, (E.D. Tex. 2017) ("[C]ompliance with the procedural requirements of the PSLRA is mandatory and should be strictly enforced."); *In re Regions Morgan Keegan Open-End Mut. Fund Litig.*, 2009 WL 10665043, at *4 (W.D. Tenn. Sept. 30, 2009) ("As other courts interpreting the language of the PSLRA have found, the language of the statue [sic] is plain: the sixty-day deadline is mandatory.").

Some courts, however, have excused the 60-day deadline. For example, in *GGCC, LLC v. Dynamic Ledger Sols., Inc.*, 2018 WL 1388488, at *3 (N.D. Cal. Mar. 16, 2018), the court considered a motion that was timely, but filed in the wrong action. Four movants filed timely motions in the case pending before the court. A fifth movant also filed a timely motion; however, that fifth movant filed its motion in one of the related cases seeking to be consolidated – not in the case before the court. One day after the 60-day window had expired, the fifth movant "refiled an identical version of his motion in [the case presently before the court]." *Id*. at *3. The court noted that "[t]he timing of [the fifth movant's] motion [was] critical because he undisputedly assert[ed] the largest financial interest." *Id*. The *GGCC* court decided that the motion could be considered because the movant filed its motion in response to a notice issued in the related case, which contained information pertaining to the related case but made no reference to the case actually pending before the court. The court in *GGCC* found the movant's mistake to be "best understood as a mistake made in good faith rather than an act of legal gamesmanship of the sort the PSLRA was designed to prevent." *Id*. at *4. The court explained that "refusing to consider [the movant's] motion would be an unnecessarily stringent application of the statutory deadlines that would undercut

the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome." *Id.*

A similar result was reached in *Reitan v. China Mobile Games & Ent. Group, Ltd.*, 68 F. Supp. 3d 390, 397 (S.D.N.Y. 2014), where the movant originally filed a timely motion, but subsequently withdrew its motion because it appeared that another group had the largest financial interest. However, when that group with the purported largest interest also withdrew, the movant then filed a "withdrawal of withdrawal" motion. This motion, however, was past the 60-day window. Therefore, the question presented before the *Reitan* court was whether the movant should "be permitted to file an untimely motion for appointment as lead plaintiff after withdrawing a previous, timely motion[.]" *Id.* at 397. The court cited to several cases which had permitted filings after the 60-day window, explaining that "these decisions plainly demonstrate that courts ... have not adhered strictly to the PSLRA's timing requirements in every instance" and that "[t]he reasons for excepting cases from the 60-day deadline commonly are that a timely motion was filed previously, that the new motion is not made to manipulate the size of the movant's losses, and that granting the motion would not undermine any of the policies that underlie the PSLRA." *Id.* at 397. Ultimately, the *Reitan* court decided to consider the movant's second, untimely motion because (1) its first motion was timely; (2) the movant was not attempting to manipulate/aggregate the size of its loss; and (3) excepting the movant from the 60-day deadline would not "undermine any of the policies behind the PSLRA." *Id.* at 397-98. Importantly, the *Reitan* court also found that

> allowing [the movant] to make a new lead plaintiff motion will not offend the policy goals Congress hoped to achieve in passing the PSLRA. [The movant] is an institutional investor and alleges greater financial losses than [the opposing individual-investor movant]; [The movant] is precisely the type of plaintiff Congress hoped would become lead plaintiff.

*Id.* at 399 (citing David H. Webber, *Is "Pay-to-Play" Driving Public Pension Fund Activism in Securities Class Actions? An Empirical Study,* 90 B.U. L. Rev. 2031, 2034 (2010) ("Congress believed that institutional investors, sophisticated investors with significant losses at stake, would carefully select and monitor plaintiffs' lawyers to the benefit of the class of aggrieved shareholders, in contrast to individual lead plaintiffs with meager shareholdings and little leverage over their counsel.")).

Another example of a court excusing the 60-day deadline is *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *9 (S.D.N.Y. Mar. 19, 2012). In *Peters*, the moving deadline was December 12, 2011. Several movants – both individuals and groups – filed timely motions to be lead plaintiff. On January 5, 2012, however, a new group filed a motion; this new group consisted of individual members that broke off from the original groups that had initially filed timely motions. *Id.* at *2. Acknowledging that other courts have strictly construed the 60-day deadline, the *Peters* court nonetheless allowed the new group to file its late motion because

the new group "plainly did not join up in order to 'manipulate the size of their financial loss.'" *Id.* at *10. The court noted that three out of the four members of the new group "already ha[d] far and away the largest financial losses of any other potential lead plaintiff." *Id.* The court in *Peters* continued that "each member of the [new] [g]roup was part of a group that [originally] filed a timely motion to be appointed lead plaintiff." As a result, the court did not bar consideration of the new group's motion.

Finally, in *Waterford Township Police*, 2017 WL 10667732, at *3, the court permitted a motion that was filed late. The court acknowledged that district courts "generally emphasize the strict nature of the PSLRA's 60[-]day deadline" and "agree[d] with the two main concerns that underlie [those] opinions: (1) unscrupulous litigants should not be permitted to manipulate their financial loss calculation after reviewing timely-filed motions and (2) late filings should not cause significant delays in the litigation." *Id.* at *4. The *Waterford* court found that those two concerns were not present in the case, and therefore accepted the movant's motion as timely "in the interest of justice." *Id.* The court also noted in a footnote that there existed "non-binding authority indicat[ing] that while the PSLRA's deadline is strict, it does not rob the district court of the discretion to consider untimely motions in all circumstances." *Id.* at *4, n.1.

*Id.* at *7–8 (alterations in original).

The *Montesano* court agreed with the courts holding that untimely motions for appointment

may be considered and applied the rule, as follows:

Here, the Court agrees that while the PSLRA's 60-day window generally appears to be a strict deadline, "it does not rob [ ] district court[s] of the discretion to consider untimely motions in all circumstances." *Id.* Accordingly, the Court will not bar consideration of Opus's motion for the following reasons.

As in *GGCC*, the Court acknowledges that "refusing to consider [Opus's] motion would be an unnecessarily stringent application of the statutory deadline that would undercut the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome." 2018 WL 1388488, at *4. The court in *GGCC* elaborated on this ruling:

Ideally, [the movant's] lawyers would have avoided this mistake. There is no indication, however, that the [movant's untimely motion] caused any prejudice to the other movants .... There is similarly little reason to believe that considering [the movant's] motion would foil the overall goals of the PSLRA's time provisions "to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process.

*Id.* The Court also finds that considering Opus's motion will not "foil the overall goals of the PSLRA's time provisions 'to ensure that the lead plaintiff is appointed

at the earliest possible time and to expedite the lead plaintiff process.'" *Id.*; *see also Reitan*, 68 F. Supp. 3d at 399 ("[E]xcepting [the movant] from the PSLRA's timeliness requirement will not create significant delays in the [c]ourt's ability to decide this case."). Here, Opus's motion was filed less than a day after the 60-day period.

In addition, there is no indication that Opus filed its motion in an attempt to manipulate the size of its losses. *See, e.g.*, *Reitan*, 68 F. Supp. 3d at 397. Opus filed a motion in the Central District of California the same day that the other movants filed in this Court, and the motion in the Central District stated loss amounts consistent with the filing in this Court. The Court also finds that "allowing [Opus] to make [its] lead plaintiff motion will not offend the policy goals Congress hoped to achieve in passing the PSLRA" because Opus has clearly "suffered the greatest financial losses over [the] other [movants]." *Id.* at 399. Put simply, Opus "is precisely the type of plaintiff Congress hoped would become lead plaintiff." *Id.* The *Reitan* court aptly summarized as follows:

> The goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes – rather it was to promote a client-driven rather than lawyer-driven process – and the statute seeks to do so by favoring institutional investors who suffered the greatest financial losses over other parties. [The movant's] decision ... may have been a procedural miscalculation, but overlooking that misstep is more in keeping with the policy intentions of the PSLRA than punishing [the movant] by enforcing a procedural bar.

> *Id.* Here, that same rationale holds true. While Opus did make a procedural mistake, "overlooking that misstep is more in keeping with the policy intentions of the PSLRA than punishing [Opus] by enforcing a procedural bar." *Id.*

*Id.* at *9 (alterations in original).

The court agrees with the rule applied in *Montesano*. District courts have discretion to consider untimely motions for appointment as lead plaintiff in some circumstances. The court disagrees with the decisions that have held otherwise. Those courts have reasoned that because there is no textual hook in the PSLRA for excusing untimely motions, the deadlines must be absolute. But claims-processing rules—"rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times"—are subject to equitable principles unless Congress "clearly" provides otherwise. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435, 436 (2011); *see also Irwin v. Department of*

*Veterans Affairs*, 498 U.S. 89, 95 (1990) ("Time requirements in lawsuits . . . are customarily subject to equitable tolling."); *Carlisle v. United States*, 517 U.S. 416, 435 (1996) (Ginsburg, J. concurring) ("[L]imitation periods generally . . . [are] not utterly exceptionless."); *Bowles v. Russell*, 551 U.S. 205, 216 (2007) (Souter, J. dissenting) ("While a mandatory but nonjurisdictional limit is enforceable at the insistence of a party claiming its benefit or by a judge concerned with moving the docket, it may be waived or mitigated in exercising reasonable equitable discretion.").

The PSLRA does not express a clear intent to deprive courts of the equitable power to consider untimely motions for appointment as lead plaintiff. It requires only that notices advise class members that they "may move the court to serve as lead plaintiff" "not later than 60 days after the date on which the notice is published." § 78u–4(a)(3)(A)(i)(II). This is a notice requirement on the "plaintiff or plaintiffs" initiating the action and, by implication, a deadline on all prospective lead plaintiffs to file motions for that position. The only restriction on a district court's power to consider untimely motions comes from § 78u–4(a)(3)(B)(i):

> Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, . . . and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . .

It is reasonable to read this provision as prohibiting a trial court from considering an untimely motion for appointment if doing so would prevent the court from appointing a lead plaintiff within 90 days from publication of the notice. But that question is not before the court. The 90-day limit does not apply here because the competing candidates moved to consolidate the Alabama and Texas actions. So, instead of the 90-day limit, the court is required to appoint a lead plaintiff "[a]s soon as practicable" after consolidation. § 78u–4(a)(3)(B)(ii).

The court also agrees with *Montesano*'s approach to the circumstances under which a court may consider an untimely motion for appointment as lead plaintiff. The relevant considerations are these:

> (1) Would refusing to consider the motion undermine the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome?
>
> (2) Would considering the motion frustrate the PSLRA's goals of ensuring that the lead plaintiff is appointed at the earliest possible time and expediting the lead plaintiff process?
>
> (3) Did the untimeliness result from a scheme to manipulate the size of the movant's financial loss calculation after reviewing timely-filed motions, or from any other improper purpose?
>
> (4) Would considering the motion prejudice the other lead-plaintiff movants?
>
> (5) Did the untimely movant file a previous, timely motion for appointment?

Applying these factors to Bender and Misri's motion leads to the conclusion that the PSLRA's goals would be furthered, not frustrated, by excusing the lateness of the motion.

First, refusing to consider the motion would frustrate the PSLRA's preference for appointing the plaintiff with the greatest financial stake in the outcome. Bender and Misri's financial stake is about 10 times greater than Marti and Zeman's, and about 30 times greater than Passmore's. The judgment of the PSLRA is that, all things being equal, Bender and Misri are more likely than the competing candidates to have the interest and ability to control the litigation and class counsel, fulfilling the "overriding goal" of making the action investor-driven, not lawyer-driven. *See Ravens*, 174 F.R.D. 651, 653–54. Bender and Misri appear to be "precisely the type of plaintiff Congress hoped would become lead plaintiff." *Reitan v. China Mobile Games & Entm't Group, Ltd.*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014).

Second, considering the motion would not delay the lead plaintiff process. The competing motions for appointment did not become ripe until Judge Moorer resolved the issues of

consolidation and venue.  *See* § 78u–4(a)(3)(B)(ii).  Any delay in the process is attributable to the motions for consolidation filed by the competing candidates, not to Bender and Misri's motion for appointment.  The competing candidates argue that Bender and Misri complicated the consolidation analysis by filing suit in this court, delaying the appointment process.  However, the venue issue arose independently from Bender and Misri's untimely motions for appointment.  Had Bender and Misri intervened in Alabama and then timely moved for appointment and transfer— as perhaps they should have—the appointment process would still have been delayed.

Third, the circumstances are incompatible with finding that Bender and Misri intended to manipulate the size of their financial loss calculation.  Bender and Misri filed their initial motion in this court on the same day the competing candidates filed their motions in Alabama.  (Docket Entry No. 4 [23-2145]).  Bender and Misri's untimely Alabama motions do not assert a loss calculation different from the one asserted in their initial, timely motion.  (*Id.* at 5; Docket Entry Nos. 29, 50 [24-290]).

The competing candidates argue that Bender and Misri filed suit and moved for appointment in the Southern District of Texas for some improper purpose.  But their accusations are vague and speculative.  Passmore wonders whether Bender and Misri sought to gain "some sort of 'last mover' advantage" or to "avoid the need to retain local counsel in a district where securities class actions are less commonly initiated."  (Docket Entry No. 35 at 19 n.6 [24-290]).  Marti and Zeman similarly argue that "Bender and Misri presumably hoped to gain some procedural advantage by bypassing [the Southern District of Alabama] and filing a new, virtually identical action in the Southern District of Texas just hours before the lead plaintiff motion deadline, then seeking a leadership role in that action alone."  (Docket Entry No. 36 at 23 [24-290]; *see also id.* at 21 [arguing that Bender and Misri's filings "reflect an effort to gain some perceived tactical advantage in this litigation"]).  Both sets of competing candidates go so far as to

suggest that Bender and Misri's counsel may have filed the complaint without their clients' knowledge.  (Docket Entry No. 35 at 21 n.9 [24-290]); Docket Entry No. 36 at 24 [24-290]).  Such guesses, presumptions, and speculations do not establish an improper purpose.  *See Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, No. 3:15-CV-3415-D, 2016 WL 1625774, at \*5 (N.D. Tex. Apr. 25, 2016) ("[S]peculative assertions are insufficient to rebut the presumption that Michigan is the most adequate plaintiff.")

Bender and Misri explain that they filed suit and moved for appointment in the Southern District of Texas because they believed it was the proper venue.  (Docket Entry No. 40 at 7–11 [24-290]).  They turned out to be right.  (Docket Entry No. 36 at 23-2145]).  Perhaps they should have instead intervened in the Alabama actions, filed a timely motion for appointment in *Passmore*, and moved to consolidate and then transfer the Alabama actions to the Southern District of Texas.  But even characterizing this as a procedural misstep does not show improper purpose. "[O]verlooking that misstep is more in keeping with the policy intentions of the PSLRA than punishing [Bender and Misri] by enforcing a procedural bar."  *Reitan*, 68 F. Supp. 3d at 399.

Fourth, considering Bender and Misri's motion would not unfairly prejudice the competing candidates.  The competing candidates do not argue prejudice independent from their arguments, already rejected by the court, that Bender and Misri have delayed the appointment process.  The competing candidates learned of Bender and Misri's initial motion for appointment no later than two weeks after it was filed, and they have had plenty of time to brief their opposition.

Fifth, Bender and Misri filed a timely motion for appointment in this court before they filed untimely motions in the Alabama actions.  *See GGCC, LLC v. Dynamic Ledger Sols., Inc.*, 2018 WL 1388488, at \*3 (N.D. Cal. Mar. 16, 2018) (excusing untimeliness when a previous motion for appointment was timely filed, but in the wrong action).

In conclusion, two alternative grounds support considering Bender and Misri for lead plaintiffs. Bender and Misri's initial motion, filed in this court, was timely. The court is not precluded from considering that motion merely because it was not filed in the first filed action that triggered the notice requirement. Alternatively, the court may consider Bender and Misri's untimely motions for appointment filed in the now consolidated and transferred Alabama cases. The court finds that considering those motions would further the PSLRA's purpose.

### B.      Whether Bender and Misri Satisfy Rule 23

A plaintiff is not entitled to the most-adequate-plaintiff presumption if he does not "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." § 78u–4(a)(3)(B)(iii)(I)(cc). The court need not conduct a "searching" Rule 23 inquiry at this stage. *Enron*, 206 F.R.D. at 441. The question is whether the prospective lead plaintiff has made "a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members." *Id.* The court finds that Bender and Misri have made this showing.

Bender and Misri appear to assert claims that are typical of the class. They allege that they purchased Vertex securities at prices that were artificially inflated by the defendants' misrepresentations and omissions, and that they suffered financial loss when the truth was revealed, causing Vertex's share price to drop. (Docket Entry No. 4 at 4 [23-2145]).

Bender and Misri also appear capable of adequately representing the class. They have a large financial interest in the litigation. They have a collective 48 years of investment experience. (*Id.* at 7). They are educated and well-employed. (*Id.*). And, they have been friends for six years. (*Id.*).

The competing candidates do not offer rebuttal evidence to prove that Bender and Misri either "will not fairly and adequately protect the interests of the class" or are "subject to unique

defenses that render [them] incapable of adequately representing the class." § 78u–4(a)(3)(B)(iii). They argue, without evidence, that Bender and Misri's alleged "gamesmanship" makes them inadequate. (Docket Entry No. 36 at 22–24 [24-290]). This argument fails for lack of support.

Because Bender and Misri are entitled to the most-adequate-plaintiff presumption, the court need not consider the arguments for or against the appointment of the competing candidates. The court is bound to appoint Bender and Misri. *See* § 78u–4(a)(3)(B)(i)&(iii) ("The [most-adequate-plaintiff] presumption . . . may be rebutted *only* upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff [does not meet Rule 23's requirements]."); *see Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

Bender and Misri are appointed lead plaintiffs of the putative class.

### C.     Whether Bender and Misri's Counsel is Adequate

"The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." § 78u–4(a)(3)(B)(iii)(II)(v). The court may appoint class counsel only upon finding that the counsel is "adequate under Rule 23(g)(1) and (4)." FED. R. CIV. P. 23(g)(2). Rule 23(g)(1) provides:

> Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> (A) must consider:
>
>> (i) the work counsel has done in identifying or investigating potential claims in the action;
>>
>> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

Rule 23(g)(4) provides: "Class counsel must fairly and adequately represent the interests of the class."

Bender and Misri move for the appointment of The Rosen Law Firm, P.A. as lead counsel and Cunningham Bounds as liaison counsel.  (Docket Entry No. 4 at 7 [23-2145]; Docket Entry No. 50 at 2 [24-290]).  They assert that their counsel "have been actively researching Plaintiffs' and Class Plaintiffs' claims, including reviewing publicly available financial and other documents while gathering information in support of the claims against the Defendants."  (Docket Entry No. 4 at 7 [23-2145]).  The court has considered the firm biographies submitted by Bender and Misri and finds that the firms are experienced in class actions and knowledgeable in the applicable law. (Docket Entry No. 4-1 [23-2145]; Docket Entry No. 50-2 [24-290]).  Finally, the court finds that the firms have sufficient resources to fairly and adequately represent the class.

The Rosen Law Firm is appointed lead counsel and Cunningham Bounds is appointed liaison counsel.  The Rosen Law Firm, as lead counsel, has the duty of managing the prosecution of this litigation.  These duties include, without limitation:

(1) Avoiding duplicative or unproductive activities;

(2) preparing all pleadings;

(3) directing and coordinating the briefing and arguing of motions in accordance with the schedules set by the orders and rules of the court;

(4) initiating and directing discovery;

(5) preparing the case for trial; and

(6) engaging in settlement negotiations on behalf of the lead plaintiffs and the class.

## IV. Conclusion

Bender and Misri's motion for appointment as lead plaintiffs and for approval of their selection of counsel is granted.  (Docket Entry No. 50 [24-290]).[3]  Passmore's motion for appointment as lead plaintiff and for approval of his selection of counsel is denied.  (Docket Entry No. 21 [24-290]).  Marti and Zeman's motion for appointment as lead plaintiffs and for approval of their selection of counsel is also denied.  (Docket Entry No. 23 [24-290]).  The motions to intervene and for stay are denied as moot.  (Docket Entry Nos. 9, 13 [23-2145]).  In light of the consolidation, the joint motion for entry of an order regarding service, scheduling, and pleading is denied.  (Docket Entry No. 19 [23-2145]).

SIGNED on February 1, 2024, at Houston, Texas.

_Lee H. Rosenthal_

_____
Lee H. Rosenthal
United States District Judge

---

[3] Bender and Misri's motion for appointment and for approval of their counsel filed in this case before consolidation, (Docket Entry No. 3 [23-2145]), is denied as moot because they have since changed their request for liaison counsel.