**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| ERIC BENDER and NADER MISRI, Individually and On Behalf of All Others Similarly Situated, Plaintiffs, | No.: 4:23-cv-02145 |
|  | CLASS ACTION |
| v. | |
| VERTEX ENERGY, INC., BENJAMIN P. COWART, and CHRIS CARLSON, | District Judge Lee H. Rosenthal |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

I.      NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.     STATEMENT OF ISSUES TO BE RULED UPON AND STANDARD ......................... 2

III.    SUMMARY OF ARGUMENT ...................................................................................... 2

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................. 4

V.      THE FORM AND METHOD OF CLASS NOTICE SATISFY THE
        REQUIREMENTS OF RULE 23 .................................................................................... 5

VI.     THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE, MEETING
        THE CRITERIA FOR FINAL APPROVAL .................................................................... 6

        A.      In Finally Approving the Settlement as Fair, Adequate, and Reasonable,
                This Court Should Evaluate it Against the Requirements of
                Fed. R. Civ. P. 23(e), and this Circuit's Precedents ................................................. 7

        B.      The Proposed Settlement Is Fair, Reasonable, and Adequate ............................... 8

                1.      Lead Counsel Adequately represented the Settlement Class and
                        Plaintiffs ..................................................................................................... 8

                2.      The Settlement Resulted From Arm's Length Negotiations ..................... 10

                3.      The Relief is Adequate in Light of the Duration, Costs, and Risks
                        of Litigation .............................................................................................. 11

                4.      The Proceedings are Adequately Advanced ............................................ 12

                5.      The Settlement is Fair in Light of the Probability of Success on
                        the Merits .................................................................................................. 13

                6.      The Range of Possible Recovery .............................................................. 14

                7.      The Opinions of Lead Counsel and Plaintiffs and Absent Class
                        Members .................................................................................................... 15

                8.      The Remaining 23(e)(2) Factors Support Final Approval of
                        the Settlement ............................................................................................ 16

VII.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION .......................... 18

VIII.   CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
 2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ................................................................ 17

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ..................................................................................................... 4

*Ayers v. Thompson*,
 358 F.3d 356 (5th Cir. 2004) ........................................................................................ 8

*Berger v. Compaq Computer Corp.*,
 257 F.3d 475 (5th Cir. 2001) ........................................................................................ 8

*Burford v. Cargill, Inc.*,
 2012 WL 5472118 (W.D. La. Nov. 8, 2012) ............................................................... 11

*C.C. & L.C. v. Baylor Scott & White Health*,
 2022 WL 4477316 (E.D. Tex. Sept. 26, 2022) ........................................................ 7, 11

*Celeste v. Intrusion Inc.*,
 2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ...................................................... 17, 19

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977) ....................................................................................... 8

*DeHoyos v. Allstate Corp.*,
 240 F.R.D. 269 (W.D. Tex. 2007) ................................................................................. 4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ....................................................... 15, 17

*Faircloth v. Certified Fin. Inc.*,
 2001 WL 527489 (E.D. La. May 16, 2001) ................................................................. 10

*In re Apache Corp. Sec. Litig.*,
 2024 WL 4881432 (S.D. Tex. Nov. 25, 2024) ............................................................. 11

*In re Chicken Antitrust Litig. Am. Poultry*,
 669 F.2d 228 (5th Cir. 1982) ................................................................................. 14, 18

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
 424 F. Supp. 3d 456 (E.D. La. 2020) ..................................................................... 10, 15

*In re Corrugated Container Antitrust Litig.*,
 643 F.2d 195 (5th Cir. 1981) ....................................................................................... 10

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ................................................................................. 8

*In re Dell Inc.*,
   2010 WL 2371834 (W.D. Tex. June 11, 2010) ................................................. 13, 18

*In re Enron Sec. and ERISA Litig.*,
   2003 WL 22494413 (S.D. Tex. July 24, 2003)...................................................... 6

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................... 11

*In re Integra Realty Res., Inc.*,
   354 F.3d 1246 (10th Cir. 2004) ........................................................................... 14

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ............................................................................... 5

*In re OCA, Inc. Sec. & Derivative Litig.*,
   2009 WL 512081 (E.D. La. Mar. 2, 2009) .......................................................... 18

*In re Oil Spill by Oil Rig Deepwater Horizon*,
   295 F.R.D. 112 (E.D. La. 2013)........................................................................... 12

*In re Train Derailment Near Amite Louisiana*,
   2006 WL 1561470 (E.D. La. May 24, 2006)........................................................ 12

*In re Waste Mgmt., Inc. Sec. Litig.*,
   2002 WL 35644013 (S.D. Tex. May 10, 2002)..................................................... 18

*Jones v. Singing River Health Servs. Found.*,
   865 F.3d 285 (5th Cir. 2017) ............................................................................... 10

*Lane v. Campus Fed. Credit Union*,
   2017 WL 3719976 (M.D. La. May 16, 2017)........................................................ 10

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ............................................................................... 11

*Matson v. NIBCO Inc.*,
   2021 WL 4895915 (W.D. Tex. Oct. 20, 2021)............................................... 8, 9, 13

*McNamara v. Felderhof*,
   410 F.3d 277 (5th Cir. 2005) ............................................................................... 14

*Melby v. Am.'s MHT, Inc.*,
   2018 WL 10399004 (N.D. Tex. June 22, 2018) ................................................... 16

iii

*Mid-S. Towing Co. v. Har-Win, Inc.*,
  733 F.2d 386 (5th Cir. 1984) ................................................................................. 14

*Miller v. Republic Nat. Life Ins. Co.*,
  559 F.2d 426 (5th Cir. 1977) ................................................................................... 8

*ODonnell v. Harris Cnty., Texas*,
  2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ........................................................ 8

*Pedersen v. Kinder Morgan Inc.*,
  345 F.R.D. 302 (S.D. Tex. 2024) ............................................................................. 9

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ............................................................................. 7, 13

*Reyes v. Julia Place Condo. Homeowners Ass'n, Inc.*,
  2017 WL 430056 (E.D. La. Jan. 31, 2017) ........................................................... 14

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................................................ 16

*Turner v. Murphy Oil USA, Inc.*,
  472 F. Supp. 2d 830 (E.D. La. 2007) .................................................................... 15

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ................................................................................... 8

*Welsh v. Navy Fed. Credit Union*,
  2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ..................................................... 10

*Williams v. First Nat. Bank*,
  216 U.S. 582 (1910) ............................................................................................... 14

**Statutes**

15 U.S.C. § 78u- 4(a)(7)(A)-(F) ................................................................................. 6

28 U.S.C. § 1715 ........................................................................................................ 6

**Rules**

Fed. R. Civ. P. 23 .............................................................................................. passim

Fed. R. Civ. P. 23(a) ............................................................................................. 2, 4

Fed. R. Civ. P. 23(b) ................................................................................................. 4

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 2, 4

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................................. 14

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................. 5

Fed. R. Civ. P. 23(e) ..................................................................................................... 1, 7

Fed. R. Civ. P. 23(e)(2)......................................................................................... 2, 7, 8, 16

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................. 10

Fed. R. Civ. P. 23(e)(2)(C)(i)........................................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) & (e)(2)(D)................................................................ 16

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................................ 17

Fed. R. Civ. P. 23(e)(2)(C)(iv)......................................................................................... 18

Fed. R. Civ. P. 23(e)(3); and (D) ...................................................................................... 7

Pursuant to Fed. R. Civ. P. 23(e) Co-Lead Plaintiffs Eric Bender and Nadar Misri, ("Lead Plaintiffs"), along with Additional Plaintiff Phillip Laudino (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in support of their unopposed motion for the entry of an order granting: (i) final approval of the proposed settlement of the above captioned securities class action ("Consolidated Actions") on the terms set forth in the Stipulation of Settlement filed on April 18, 2025 (Dkt. No. 72) ("Stipulation" or "Stip."); and (ii) approval of the proposed plan for allocating the net proceeds of the Settlement to the Settlement Class ("Plan of Allocation" or "Plan").[1]

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a securities class action asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and United States Securities and Exchange Commission Rule 10b-5 thereunder against defendants Vertex Energy, Inc. ("Vertex" or "Company"), Benjamin Cowart, and Chris Carlson (together, the "Individual Defendants," and with Vertex, "Defendants").

Subject to the Court's approval, Plaintiffs have agreed to settle all claims in the Consolidated Actions in exchange for a non-reversionary, all-cash payment of $6,300,000 for the benefit of the Settlement Class. The Court granted preliminary approval of the Settlement on April 21, 2025. (Dkt. No. 75). Plaintiffs now move for final approval of the Settlement and approval of the Plan of Allocation.

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation of Settlement dated April 18, 2025 ("Stipulation") (Dkt. No. 72), The Declaration of Gonen Haklay in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses and Awards To Plaintiffs (the "Haklay Declaration" or "Haklay Decl."), filed concurrently with this motion, or the Amended Complaint ("Complaint") (Dkt. No. 49). Unless otherwise noted, all citations to "¶__" and "Ex. __" in this Memorandum refer, respectively, to paragraphs in, and Exhibits to, the Haklay Declaration.

1

## II.    STATEMENT OF ISSUES TO BE RULED UPON AND STANDARD

1.    Whether the Court should certify the Class for purposes of the Settlement;

2.    Whether notice to the Settlement Class satisfied the requirements of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

3.    Whether the Court should finally approve the proposed Settlement of these Consolidated Actions as fair, reasonable, and adequate under Rule 23(e)(2); and

4.    Whether the Court should approve the proposed Plan of Allocation as fair and reasonable.

## III.    SUMMARY OF ARGUMENT

Plaintiffs respectfully submit that the Court should finally certify the Settlement Class for purposes of effectuating the Settlement pursuant to Rules 23(a) and (b)(3).

The proposed Settlement satisfies the standards for final approval under Rule 23(e)(2). As detailed in the Haklay Declaration and summarized below, the Settlement: (i) is the culmination of vigorous litigation efforts; (ii) results from formal mediation followed by continued arm's length negotiations under the guidance of an experienced mediator and, ultimately, the Settling Parties' acceptance of the mediator's recommendation to resolve the Consolidated Actions for the Settlement Amount; and (iii) represents a meaningful percentage of the Settlement Class's potentially recoverable damages.

At the time of Settlement, Plaintiffs and their counsel were well informed about the strengths and weaknesses of the claims as well as Defendants' defenses. As described in detail in the Haklay Declaration, prior to reaching the Settlement, Lead Counsel had engaged in, among other things, (a) a detailed investigation of potential claims against Defendants that resulted in the filing of Plaintiffs' Initial Complaint in *Bender v. Vertex Energy, Inc. et. al.,* Case No. 4:23-cv-2145 (S.D. Tex.); (b) filing Plaintiffs' operative Amended Class Action Complaint ("Complaint");

2

(c) moving for consolidation and appointment of Lead Plaintiff and Lead Counsel; (d) overseeing investigative interviews of witnesses, including former employees; (e) opposing Defendants' motion to dismiss; (f) representing the Class's claims in Vertex bankruptcy proceedings, including preserving certain claims and insurance proceeds in that regard; (g) consulting with experts on the subject matter of this case, as well as on damages; and (h) engaging in settlement negotiations with Defendants, ultimately settling the case, and documenting the Settlement. ¶15. By the time of Settlement, Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of the claims and defenses asserted in the Consolidated Actions.

The $6.3 million Settlement is fair, reasonable, and adequate not only in light of the risks of the litigation, but also the risk of Vertex's bankruptcy creating risks of limited funds for collection. If the Consolidated Actions had continued, Plaintiffs and the Settlement Class would have faced significant risks in establishing Defendants' liability and proving damages in the Consolidated Actions that might have precluded securing any recovery at all, let alone a recovery greater than the Settlement Amount. First, Plaintiffs faced significant risks in proving that the alleged misstatements were materially false and misleading. ¶¶49-55. Defendants argued vigorously that their statements were not misleading, were forward-looking, were puffery, that Defendants had no obligation to disclose the information, or were otherwise inactionable under the law. ¶55. In addition, Defendants contended that any alleged misstatements were not made with "scienter," or fraudulent intent. *Id.*

Moreover, here, Defendants had substantial arguments that Plaintiffs would be unable to establish their claimed damages at trial, specifically that Plaintiffs had failed to allege a corrective disclosure leading to a loss. ¶¶51-52.

Plaintiffs also request approval of the Plan of Allocation of the Net Settlement Fund. The

3

Plan of Allocation was developed in conjunction with Plaintiffs' damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members.¶¶64-67. As such, Plaintiffs respectfully submit that it is fair and should be approved.

Finally, Plaintiff contends that Notice was adequate as Securities Claims Services Inc. ("SCS"), has disseminated 28,445 notices to potential Settlement Class Members and nominees, with no objections or opt outs. *See* Ex. 1 to the Haklay Decl., (Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl.")), at ¶¶7-9, 13-14.

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

One of this Court's functions in reviewing a proposed settlement for class action is to determine whether the action may be maintained as such under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). *See e.g.,* ). Furthermore, when "[T]he United States Court of Appeals for the Fifth Circuit has indicated a class may be certified for settlement purposes when doubt exists as to certification for litigation[.]" *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 280 (W.D. Tex. 2007).

Rule 23(a) sets four prerequisites to class certification, specifically: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. The class must also meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23. The proposed Settlement Class is defined in the Stipulation as follows:

> all persons who purchased or otherwise acquired the common stock of Vertex Energy Inc. during the Settlement Class Period, except that excluded from the Settlement Class are all: (i) Individual Defendants; (ii) the officers and directors of Vertex and its affiliates and subsidiaries; (iii) members of the officers' and directors' immediate families and their legal representatives, heirs, successors or assigns; (iv) any entity in which Individual Defendants have or had a controlling interest; and (v) opt-outs.

4

On April 21, 2025, this Court certified the Settlement Class preliminarily for settlement purposes. *See* (Dkt. No. 75). Plaintiffs respectfully submit circumstances have not changed since the Court preliminarily certified the Settlement Class. Thus, nothing prevents the Court from certifying this Settlement Class for settlement purposes, appointing Plaintiffs as Settlement Class Representatives, and approving The Rosen Law Firm, P.A. as Lead Counsel for the Settlement Class.

## V.   THE FORM AND METHOD OF CLASS NOTICE SATISFY THE REQUIREMENTS OF RULE 23

Fed. R. Civ. P. 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Newberg on Class Actions §8.5. The notice must contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

Additionally, the Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes its own requirements for notice. To conform with the PSLRA, the notice must state: (i) the amount of the Settlement proposed to be distributed to the parties as determined in the aggregate and on an average per-share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiffs prevailed, a statement from each settling party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs, and the amount that will be sought; (iv) the name, telephone number, and address of one or more representatives of counsel for the class who will be reasonably available to answer questions

concerning any matter contained in the notice; (v) a brief statement explaining why the parties are proposing the settlement; and (vi) such other information as may be required by the Court. *See* 15 U.S.C. §78u- 4(a)(7)(A)-(F).

SCS has disseminated 13,171 Postcard Notices and 15,274 Long Notices to potential Settlement Class Members and nominees. *See* Craig Decl. ¶¶7-9. In addition, SCS caused the Summary Notice to be published in GlobeNewswire and maintains a dedicated Settlement website, https://www.strategicclaims.net/Vertex/, to provide information about the Settlement and access to downloadable copies of the Notice, Claim Form, and other Settlement-related documents. *Id.* ¶10. In accordance with the Stipulation, Defendants also issued notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

In sum, the notice campaign here provided sufficient information for Settlement Class Members to make informed decisions regarding the Settlement, fairly apprises them of their rights, represents the best notice practicable under the circumstances, and complies with the Preliminary Approval Order, Rule 23, the PSLRA, and due process. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See, e.g.*, *Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation et al*, Case No. 4:21-CV-02045, (Dkt. No. 211) (S.D. Tex. Jun. 27, 2024); *In re Enron Sec. and ERISA Litig.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003). The Court should therefore approve the notice program as having complied with Rule 23, the PSLRA, and due process.

## VI. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE, MEETING THE CRITERIA FOR FINAL APPROVAL

Plaintiffs believe in the sufficiency of their allegations and those of the Settlement Class asserted, and that sufficient evidence exists that will enable them to prove their allegations. Nevertheless, Plaintiffs recognize and acknowledge the inherent problems of proof under, and

6

possible defenses to, the securities law violations alleged and the time commitment and expense of prosecuting the case through the motion to dismiss, class certification, summary judgment, trial, and appeals. Consequently, Plaintiffs believe that the proposed Settlement is a fair, adequate, and reasonable result, particularly in light of Vertex's bankruptcy.

As set forth below, the proposed settlement meets all of the objective requirements for an approvable settlement as established by the Federal Rules of Civil Procedure and the Fifth Circuit.

### A. In Finally Approving the Settlement as Fair, Adequate, and Reasonable, This Court Should Evaluate it Against the Requirements of Fed. R. Civ. P. 23(e), and this Circuit's Precedents

Federal Rule of Civil Procedure 23(e) permits approval of a class action settlement where a court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is fair, reasonable, and adequate at Rule 23(e)(2) final approval, this Court will evaluate whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As these factors overlap, rather than replacing the factors the non-dispositive factor the Fifth Circuit established in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983),[2] "courts in this circuit often combine them in analyzing class settlements." *C.C.*

---

[2] The *Reed* factors are (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Reed*, 703 F.2d at 172.

*& L.C. v. Baylor Scott & White Health*, 2022 WL 4477316, at *2 (E.D. Tex. Sept. 26, 2022) (quoting *ODonnell v. Harris Cnty., Texas*, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019)).

Settlement approval is within this Court's sound discretion. *See Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012) ("An abuse of discretion occurs only when all reasonable persons would reject the view of the district court."). Courts, however, should exercise this discretion in the context of public policy strongly favoring pretrial settlement of class action lawsuits. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "overriding public interest in favor of settlement" in class action cases); *Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) ("[settlements] will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits"); *See also, Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (particularly with respect to securities class action, "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex").

**B.      The Proposed Settlement Is Fair, Reasonable, and Adequate**

        **1.      Lead Counsel Adequately represented the Settlement Class and Plaintiffs**

The first Rule 23(e)(2) factor, whether Plaintiffs and Lead Counsel "have adequately represented the class" favors final approval of the Settlement. This factor examines: "'(1) the zeal and competence of the representatives' counsel' and (2) 'the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees' i.e., no conflicts of interest exist between the named plaintiffs and the class they seek to represent.'" *Matson v. NIBCO Inc.*, 2021 WL 4895915, at *5 (W.D. Tex. Oct. 20, 2021), *aff'd sub nom. Garcia v. Matson*, 2022 WL 6935303 (5th Cir. Oct. 12, 2022) (citing *Berger v. Compaq*

*Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)); *Pedersen v. Kinder Morgan Inc.*, 345 F.R.D. 302, 315 (S.D. Tex. 2024).

Plaintiffs and Lead Counsel have prosecuted the Consolidated Actions zealously and competently. Plaintiffs and Lead Counsel thoroughly investigated their claims against Vertex, including: retaining a private investigator; retaining a subject matter expert to assist with the complexity of energy derivatives at issue here; reviewing Vertex's public filings and news reports concerning the Company; and retaining a damages and loss causation expert consultant. Further, Plaintiffs and Lead Counsel: opposed Defendants' Motion to Dismiss; appeared at oral argument; protected the Settlement Class's rights during Defendant Vertex's bankruptcy proceedings; negotiated a favorable settlement following mediation that provides immediate recovery to Settlement Class Members; filed a motion for preliminary approval of the settlement, and oversaw notice to the Settlement Class Members. ¶¶15, 37-40, 61-63.

Moreover, Plaintiffs have no interests antagonistic to the Settlement Class. Plaintiffs' claims are based on a common course of alleged wrongdoing by Defendants and are typical of other Settlement Class Members. Accordingly, Plaintiffs are adequate representatives of the class. *See Matson*, 2021 WL 4895915, at *5 (noting in adequacy analysis that "named Plaintiffs' legal and remedial theories are substantially similar to those of other members of the Class, and they are further united in asserting a common right, such as achieving the maximum possible recovery for the class").

Accordingly, Plaintiffs and Lead Counsel have adequately represented the Settlement Class, litigating the claims in the Consolidated Actions and in reaching the Settlement. This factor supports final approval of the Settlement.

### 2.     The Settlement Resulted From Arm's Length Negotiations

Rule 23(e)(2)(B) and the first *Reed* factor also support final approval because the Settlement was negotiated at arm's-length and there is no evidence of fraud or collusion. Indeed, the Settlement was reached only after the Parties participated in extensive negotiations, starting with a full day of mediation and continued negotiating for over a month after, all with the assistance of Davd Murphy, an experienced mediator. Following these negotiations, Mr. Murphy issued a mediator's proposal to resolve the Consolidated Actions, which both sides accepted, and the Parties executed a Memorandum of Understanding on February 4, 2025. ¶38. *See Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) ("The involvement of 'an experienced and well-known' mediator is also a strong indicator of procedural fairness.") (citations omitted) (cleaned up); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020) ("arms-length negotiations between sophisticated parties with the guidance of an experienced, professional mediator" provides strong presumption of fairness). Under these circumstances—the rigorous negotiation process combined with the substantial investigation completed by Lead Counsel—the Settlement is the product of good faith, mediated, arm's-length negotiation between the Parties and is devoid of even a hint of fraud or collusion. "Courts may presume that a proposed settlement is fair and reasonable, and lacking fraud or collusion, when it is the result of arm's-length negotiations." *Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018); *see also, Faircloth v. Certified Fin. Inc.*, 2001 WL 527489 (E.D. La. May 16, 2001). Moreover, courts generally will assume the negotiations were proper if the terms of the proposed settlement are fair. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981); *Lane v. Campus Fed. Credit Union*, 2017 WL 3719976, at *7 (M.D. La. May 16, 2017).

The arm's length nature of the negotiations support final approval of the Settlement.

10

**3.      The Relief is Adequate in Light of the Duration, Costs, and Risks of Litigation**

Rule 23(e)(2)(C)(i) and the second *Reed* factor support final approval of the Settlement, as continued litigation would involve complex pre-trial, trial, and post-trial proceedings that would delay the ultimate resolution of the Consolidated Actions without any guarantee of recovery. As here, when "the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *C.C. & L.C.*, 2022 WL 4477316, at *3 citing *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012); *Burford v. Cargill, Inc*., 2012 WL 5472118, at *4 (W.D. La. Nov. 8, 2012) (approving settlement when "[c]ontinued litigation in this matter would be lengthy, complex, and expensive").

Vertex's bankruptcy presents further risks. Having been discharged in bankruptcy, Vertex cannot be a source for paying any judgment, should the Consolidated Actions proceed to trial, or in the case of a settlement. The only sources for paying any judgment are the limited insurance funds available, some of which were disbursed in the bankruptcy proceedings, and the Individual Defendants' personal accounts.

Courts consistently recognize that securities class actions are "notoriously difficult and unpredictable," *In re Apache Corp. Sec. Litig.*, 2024 WL 4881432, at *6 (S.D. Tex. Nov. 25, 2024) citing *Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) and this case was no different. In addition to the complexities involved in securities class actions generally, this case involved complex financial analysis of Defendants' hedging, which required consulting a subject matter expert. ¶15. Furthermore, Defendants have significant defenses to both liability and damages with regard to the allegedly false and misleading statements, whether the statements were made with scienter, and loss causation. Even should the Court deny Defendants' undecided Motion to Dismiss

11

the Parties would then have to commence formal discovery, brief summary judgment, and prepare for trial and try these Consolidated Actions. Additionally, Plaintiffs would have to move for class certification, a complex, timely, and costly procedural necessity. Even if Plaintiffs prevailed at trial Defendants would surely appeal the verdict.

The costs and risks associated with litigating the Consolidated Actions to a verdict, not to mention through the inevitable appeal, would be high. Finally, if taken to trial, the Consolidated Actions would easily require years before a recovery, if any, was obtained for the Settlement Class. Further, Vertex's bankruptcy presents further risks to collection. The Settlement is, therefore, adequate in light of the potential expenses faced from continued litigation, and the possibility of litigating for years with no return, or with a return lower than the proposed Settlement..

### 4. The Proceedings are Adequately Advanced

The primary purpose of examining the stage of the proceeding is to ensure that both sides adequately understand the case when negotiations begin. *In re Train Derailment Near Amite Louisiana*, 2006 WL 1561470, at *22 (E.D. La. May 24, 2006) ("In assessing the fairness, reasonableness and adequacy of a proposed class action settlement, a district court must determine whether the parties are in a position to assess their respective cases and to make reasonable decisions with respect to settlement, considering the information to which they are privy and the stage of the proceedings when the tentative deal is struck."); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 148 (E.D. La. 2013) ("[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed[.]")

Here, despite the PSLRA's stay on discovery, Plaintiffs thoroughly investigated their claims, including reviewing all publicly available documents relating to Defendants' purported

12

misstatements, examining related analyst reports, and consulting subject matter and damages experts. ¶15. Utilizing the information gleaned from this investigation, Plaintiffs filed the Complaint and opposed Defendants' Motion to Dismiss. Plaintiffs, therefore, understand the merits of their case. *See In re Dell Inc.*, 2010 WL 2371834, at *8 (W.D. Tex. June 11, 2010), *aff'd, appeal dismissed sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632 (5th Cir. 2012) (accepting that the PSLRA stay is not a bar to settlement when Plaintiffs investigated their "claims as diligently as possible outside the context of traditional discovery"). The stage of the proceedings supports approval of the Settlement.

### 5. The Settlement is Fair in Light of the Probability of Success on the Merits

The fourth *Reed* factor looks at the risks of continued litigation and the probability of Plaintiffs' success on the merits. *See Matson*, 2021 WL 4895915, at *11–12. In evaluating the likelihood of success, a court "must compare [the settlement's] terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172.

While Plaintiffs maintain they alleged cognizable claims they were prepared to litigate through trial and beyond, there are substantial risks associated with litigating a complex case such as this. There is a substantial risk that Plaintiffs will be unable to establish the required element of "material misstatement," *i.e.*, that the Defendants materially misrepresented by failing to disclose material information about Vertex's hedges on their Mobile refinery.

Plaintiffs would have faced challenges to proving both falsity and scienter. Defendants have argued in their Motion to Dismiss that Plaintiffs could not establish that the statements about the EBIDTA and hedging earnings were false, materially misleading, and made with scienter. Defendants have claimed that the statements made by Defendant Cowart about the progress and status of the hedging and the risks associated with hedging that Vertex disclosed were ever-present

13

and generally understood by the market. Additionally, Defendants claim that the statements are projections about the future and were made with proper risk disclosures, and not knowingly false when made. Further, Defendants claim that they possessed no information that contradicted the public statements or that they chose not to disclose. ¶¶51-55.

Further, even if Plaintiffs could prove that Defendants statements were materially false and made with Scienter, Plaintiff would still have difficulty proving that it was the disclosure of the true state of Vertex's finances that led to the drop in price. ¶51.

Finally, attempting to certify a class presents its own obstacles and challenges. Even if the Court certified the class, Defendants could appeal that determination pursuant to Rule 23(f) and/or move for decertification before trial.[3]

In light of these substantial risks, the Settlement provides meaningful benefits to the Settlement Class and is consistent with the public interest, as it is well settled that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910); *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 391 (5th Cir. 1984).

### 6.      The Range of Possible Recovery

To determine the fifth *Reed* factor, the courts are to assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely rewards if [a] case goes to trial[.]" *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir. 1982). "The focus of this factor is whether the settlement falls within the range of

---

[3]*See* Fed. R. Civ. P. 23(c)(1)(C); *McNamara v. Felderhof*, 410 F.3d 277, 280 n.8 (5th Cir. 2005) (citing *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("Moreover, a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment.")). *Reyes v. Julia Place Condo. Homeowners Ass'n, Inc.*, 2017 WL 430056, at *2 (E.D. La. Jan. 31, 2017), *aff'd sub nom. Reyes v. Steg L., L.L.C.*, 760 F. App'x 285 (5th Cir. 2019).

reasonableness" not to try the merits of the case. *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018).

Under the proposed Settlement, the Settlement Class will receive $6,300,000—an adequate and reasonable amount—in exchange for the release of all claims against Defendants. Furthermore, the Court should evaluate the adequacy and fairness of the Settlement in the context of Vertex's bankruptcy and discharge therefrom, limiting recovery to the Individual Defendants' assets and directors and officers insurance proceeds.

Considering the risks of continued litigation, as described above, the time and expense which would be incurred to prosecute the Consolidated Actions through a trial, and the limited proceeds available either to fund a settlement or to satisfy a future judgment in the Consolidated Actions, the Settlement represents a fair, adequate, and reasonable recovery, supporting final approval of the Settlement.

### 7. The Opinions of Lead Counsel and Plaintiffs and Absent Class Members

The opinions of Lead Counsel, Plaintiffs, and the Settlement Class Members all support final approval of the Settlement, thereby satisfying the sixth *Reed* factor. Lead Counsel have considerable experience in complex class action litigation and securities law, have conducted a thorough investigation into the claims against Defendants, and have a firm understanding of the strengths and risks attendant to these claims. ¶¶47-48. Based on this understanding, and their substantial experience, Lead Counsel has determined that the Settlement is fair, reasonable, and adequate. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 489 (E.D. La. 2020) ("Class Counsel are intimately familiar with the case and the Settlement, and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement."); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007) (internal

15

quotations omitted); *Melby v. Am.'s MHT, Inc.*, 2018 WL 10399004, at \*10 (N.D. Tex. June 22, 2018) ("[W]here the parties have conducted an extensive investigation, … and class counsel is experienced in class action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'") (citing *Schwartz v. TXU Corp.*, 2005 WL 3148350, at \*21 (N.D. Tex. Nov. 8, 2005)).

Likewise, Plaintiffs also strongly endorse the Settlement. *See* Ex. 3-5. Plaintiffs supervised Lead Counsel during the Consolidated Actions and were kept apprised of the settlement negotiations with Defendants as well as developments in the underlying litigation. Plaintiffs' support for the Settlement further demonstrates its fairness.

The positive response of the Settlement Class to date also supports final approval. The Court-appointed Claims Administrator, SCS has mailed or emailed 13,171 Postcard Notices and 15,274 Long Notice to potential Settlement Class Members and nominees. *See* Craig Decl. at ¶7-9. The notices collectively describe the essential terms of the Settlement and inform Settlement Class Members of their rights in connection therewith. While the July 11, 2025, exclusion deadline, and the July 9, 2025, objections deadline have not yet passed, to date, there have been no objections or requests for exclusion. Craig Decl. at ¶¶13-14.

### 8. The Remaining 23(e)(2) Factors Support Final Approval of the Settlement

Rule 23(e)(2) instructs courts to also consider: (i) "the effectiveness of [the] proposed method of distributing [the] relief [provided] to the class, including the method of processing class-member claims;" (ii) "the terms of any proposed award of attorney's fees, including timing of payment;" (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) & (e)(2)(D). These factors also support final approval.

16

First, the proposed method of distribution and claims processing ensures equitable treatment of Settlement Class Members. Settlement Class Members' Claims will be processed and the Net Settlement Fund distributed pursuant to a standard method routinely approved in securities class actions. The Claims Administrator, SCS, will review and process all Claims received, provide each Claimant with an opportunity to cure any deficiency in their Claim or request judicial review of the denial of their Claim, if applicable, and will ultimately mail or wire Authorized Claimants their pro rata share of the Net Settlement Fund, as calculated under the Plan of Allocation. *See* ¶¶61-67.

Second, the relief provided by the Settlement remains adequate upon consideration of "the terms of [the] proposed award of attorney's fees" and expenses incurred in prosecuting the Consolidated Actions, including the timing of any such Court-approved payments. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As shown in the Fee and Expense Memorandum, the requested attorneys' fees of one-third of the Settlement Fund, to be paid upon the Court's approval, is reasonable in light of Lead Counsel's efforts on a contingency basis. Additionally, the request is fully supported by Fifth Circuit case law. *See, e.g., Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *11 (E.D. Tex. Dec. 16, 2022) (finding that one-third of the settlement is "squarely in the accepted range"); *Halliburton*, 2018 WL 1942227, at *7 (granting one-third fee). Settlement Class Members will have an opportunity to address the fee request before the Settlement Hearing, and after Lead Counsel have made submissions in support of their request.

Last, the only agreement the Settling Parties executed beyond the Stipulation was a confidential Supplemental Agreement regarding requests for exclusion. *See* Stipulation, ¶10.5; *see*

17

*also* Fed. R. Civ. P. 23(e)(2)(C)(iv). The Supplemental Agreement provides Defendants with the right to terminate the Settlement in certain limited circumstances. *Id*. This type of agreement is standard in securities class actions and does not undermine the fairness of the Settlement. (*See In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *10 (E.D. La. Mar. 2, 2009) (finding that such a supplemental agreement is not unreasonable nor unfair).

For the reasons set forth above and in the Haklay Declaration, the Settlement is fair, reasonable, and adequate under the applicable standards for final approval.

## VII.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard as the settlement—the plan must be "fair, adequate, and reasonable." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). A plan of allocation need not be perfect—to be fair, reasonable, and adequate, "[t]he allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Dell,* 2010 WL 2371834, at *10; see also *In re Waste Mgmt., Inc. Sec. Litig*., 2002 WL 35644013, at *20 (S.D. Tex. May 10, 2002) (approving plan where class received proceeds "based on the size and strength of their claims"), amended on other grounds, 2003 WL 27380802 (S.D. Tex. July 31, 2003).

Here, the Plan set forth in the Notice was developed by Lead Counsel in consultation with Plaintiffs' damages expert. ¶21. The Plan will equitably distribute the Net Settlement Fund to Settlement Class Members who timely submit valid Claims demonstrating they suffered economic losses as a proximate result of Defendants' alleged violations of the federal securities laws. *Id.*

The Plan is based upon the estimated amount of alleged artificial inflation in the price of Vertex common stock that was allegedly proximately caused by the misrepresentations and omissions alleged in the Consolidated Actions. In calculating the estimated alleged artificial

18

inflation, Plaintiffs' damages expert considered price changes in Vertex common stock in reaction to the public disclosures that allegedly corrected the respective alleged misrepresentations and omissions, adjusting the price changes for factors that were attributable to market or industry forces, and for non-fraud related, Vertex-specific information. To have a loss, a Claimant must have purchased and/or acquired shares of Vertex common stock during the Settlement Class Period and held these shares through at least one of the dates when the disclosure of alleged corrective information partially removed the alleged artificial inflation from the price of Vertex common stock.

Further, a Claimant's loss will depend upon several factors, including the date(s) when the Claimant purchased/acquired/sold their Vertex common stock during the Settlement Class Period and at what price(s), taking into account the PSLRA's statutory limitation on recoverable damages. *Id*. Authorized Claimants will recover their proportional "pro rata" amount of the Net Settlement Fund based on their calculated recognized loss. ¶¶64-67. *See Celeste*, 2022 WL 17736350, at *5 (approving allocation plan in which each class member would receive a pro rata share of loss). Plaintiffs' trading activity is treated in the same manner as that of all other Settlement Class Members.

The Plan will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who suffered losses as a result of Defendants' alleged conduct. The Notice fully disclosed the Plan, and, to date, there have been no objections to the Plan. ¶60. For these reasons, the Plan should be approved.

## VIII.    CONCLUSION

For the reasons herein, Plaintiffs respectfully request that the Court (i) certify the Class for purposes of the Settlement; (ii) rule that notice to the Settlement Class satisfied the requirements of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process; (iii)

19

finally approve the proposed settlement of the Consolidated Actions as fair, reasonable, and adequate; and (iv) approve the proposed plan for allocating the net proceeds of the Settlement to the Settlement Class.

Dated: June 25, 2025                                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ *Gonen Haklay*
Gonen Haklay (pro hac vice)
Jacob A. Goldberg (pro hac vice)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
ghaklay@rosenlegal.com
jgoldberg@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**

Stuart L. Cochran (Texas Bar No.: 24027936)
8080 Park Lane, Suite 700
Dallas, Texas 75231
Tel: 214.265.3800
Fax: 214.691.6311
scochran@condontobin.com

*Liaison Counsel for Plaintiffs and the Class*

**THE SCHALL LAW FIRM**

Brian Schall
2049 Century Park E #2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile: (213) 519-5876
Email: brian@schallfirm.com

*Additional Counsel*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on June, 25, 2025 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/Gonen Haklay*
Gonen Haklay