UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ERIC BENDER and NADER MISRI, Individually and On Behalf of All Others Similarly Situated, Plaintiffs, | No.: 4:23-cv-02145 |
| v. | CLASS ACTION |
| VERTEX ENERGY, INC., BENJAMIN P. COWART, and CHRIS CARLSON, Defendants. | District Judge Lee H. Rosenthal |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78U-4(A)(4)**

**TABLE OF CONTENTS**

I.      NATURE AND STAGE OF THE PROCEEDING.............................................. 1

II.     STATEMENT OF ISSUES TO BE RULED UPON........................................... 2

III.    SUMMARY OF THE ARGUMENT ................................................................ 2

IV.     LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE
        AND SHOULD BE APPROVED ..................................................................... 4

        A.      This Court Should Award Attorneys' Fees Should from the Settlement
                Amount ..................................................................................................... 4

        B.      The Court should Award Attorneys' Fees Using the Percentage of
                Recovery Method. .................................................................................... 5

        C.      The *Johnson* Factors Confirm the Requested Fee is Fair and Reasonable ............. 8

                1.      The Time and Labor Required.................................................... 9

                2.      Novelty and Difficulty of the Issues ........................................ 10

                        a)      Liability Could be Difficult to Prove ........................... 11

                        b)      Obtaining Class Certification and Proving Loss Causation
                                and Recoverable Damages Could be Difficult.............. 12

                3.      Lead Counsel Possesses the Experience, Reputation, and Ability
                        Necessary to Prosecute these Consolidated Actions Zealously and
                        Competently ........................................................................... 13

                4.      Preclusion of Other Employment............................................. 14

                5.      The Customary Fee for Similar Work in the Community ........ 14

                6.      Whether the Fee is Fixed or Contingent ................................. 15

                7.      The Amount Involved and the Results Obtained..................... 15

                8.      The Undesirability of the Case ............................................... 16

                9.      The Nature and Length of the Professional Relationship with
                        the Client.............................................................................. 17

V.      AWARDS IN SIMILAR CASES ................................................................... 17

        A.      The Settlement Class's Reaction to The Fee Request ......................... 17

i

B. A Lodestar Cross-Check Confirms the Reasonableness of the Request Fee ........................................................................................................... 18

VI. Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred in the Prosecution of these Consolidated Actions ................................................... 19

VI. THE COURT SHOULD GRANT THE PROPOSED AWARDS TO PLAINTIFFS ....................................................................................................... 20

VII. CONCLUSION ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ........................................................................ 7

*Armstrong v. Kimberly-Clark Corp.*,
No. 3:20-CV-3150-M, 2024 WL 1123034 (N.D. Tex. Mar. 14, 2024) .................................... 19

*Barton v. Drummond Co.*,
636 F.2d 978 (5th Cir. 1981) ................................................................................................ 4

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ............................................................................................................. 5

*Billitteri v. Sec. Am., Inc.*,
2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ................................................................... 14, 16

*Blackmon v. Zachary Holdings, Inc.*,
2022 WL 2866411 (W.D. Tex. July 21, 2022) ...................................................................... 19

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................................................. 4

*Braud v. Transp. Serv. Co. of Illinois*,
2010 WL 3283398 (E.D. La. Aug. 17, 2010) ........................................................................ 16

*Buettgen v. Harless*,
No. 3:09-CV-00791-K, 2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ........................... 8, 20

*Burford v. Cargill, Inc.*,
2012 WL 5471985 (W.D. La. Nov. 8, 2012) ..................................................................... 7, 14

*Burnett v. CallCore Media, Inc.*,
2024 WL 3166453 (S.D. Tex. June 25, 2024) .................................................................... 5, 10

*Celeste Neely*,
2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ............................................................... passim

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
2015 WL 965696 (W.D. La. Mar. 3, 2015) ...................................................................... 14, 16

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................................................................... 19

*Coggins v. Camber Energy Inc.*,
693 F. Supp. 3d 736 (S.D. Tex. 2023) .................................................................................. 11

*Deka Inv. GMBH v. Santander Consumer USA Holdings Inc.*,
  2021 WL 118288 (N.D. Tex. Jan. 12, 2021) ................................................................ 21

*Di Giacomo v. Plains All Am. Pipeline*,
  2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ............................................. 10, 18, 19

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ....................................... 7, 16, 18, 21

*Evans on behalf of United Dev. Funding IV v. Greenlaw*,
  2019 WL 7879735 (N.D. Tex. Feb. 27, 2019) ............................................................ 14

*Evans v. TIN, Inc.*,
  2013 WL 4501061 (E.D. La. Aug. 21, 2013) ......................................................... 6, 18

*Genesee Cnty. Employees' Ret. Sys. v. FirstCash Holdings Inc.*,
  667 F. Supp. 3d 295 (N.D. Tex. 2023) ...................................................................... 11

*Glock v. FTS Int'l*,
  2021 WL 1422714 (S.D. Tex. Apr. 13, 2021) ............................................................. 7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ..................................................................................................... 12

*Hicks v. Stanley*,
  No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............. 20

*In re Apache Corp. Sec. Litig.*,
  2024 WL 4881432 (S.D. Tex. Nov. 25, 2024) .......................................................... 11

*In re Arthrocare Corp. Sec. Litig.*,
  2012 WL 12951371 (W.D. Tex. June 4, 2012) .......................................................... 21

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) .......................................................................................... 6

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 852 (W.D. Pa. 1995) ............................................................................... 7

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  424 F. Supp. 3d 456 (E.D. La. 2020) ........................................................................... 5

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
  2019 WL 6043440 (S.D. Tex. Feb. 13, 2019) ........................................................... 21

*In re Combustion, Inc.*,
  968 F. Supp. 1116 (W.D. La. 1997) ............................................................................. 8

iv

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) .................................................................... 16

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................. 11

*In re OCA, Inc. Sec. & Derivative Litig.*,
    No. CIV.A.05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ........................ 6, 10

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) .................................................................... 17

*In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*,
    2020 WL 1433923 (E.D. La. Mar. 24, 2020) ..................................................... 6, 18

*In re Zonagen, Inc. Sec. Litig.*,
    322 F. Supp. 2d 764 (S.D. Tex. 2003) .................................................................... 12

*Jenkins v. Trustmark Nat. Bank*,
    300 F.R.D. 291 (S.D. Miss. 2014) ........................................................................ 4, 19

*Johnson v. Ga. Highway Express*,
    488 F.2d 714 (5th Cir. 1974) ................................................................................ 5, 8

*Jones v. Diamond,*
    636 F.2d 1364 (5th Cir. 1981) ............................................................................... 15

*Lindsey v. Memphis-Shelby Cnty. Airport Auth.*,
    229 F.3d 1150 (6th Cir. 2000) ............................................................................... 12

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ............................................................................. 10, 11

*Melby v. Am.'s MHT, Inc.*,
    2018 WL 10399003 (N.D. Tex. July 5, 2018) ........................................................ 16

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..................................................................... 13

*Miller v. Glob. Geophysical Servs. Inc.*,
    2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) ...................................................... 21

*Nelson v. Waring*,
    602 F. Supp. 410 (N.D. Miss. 1983) ....................................................................... 5

*Plunkett v. FirstKey Homes LLC*,
    2024 WL 5315330 (N.D. Tex. Nov. 21, 2024) ...................................................... 18

*Prause v. TechnipFMC*,
   2021 WL 6053219 (S.D. Tex. Mar. 23, 2021)...................................................... 8

*Schwartz v. TXU Corp.*,
   No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .............................. passim

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000)............................................................. 13

*Shen v. Exela Techs., Inc.*,
   2023 WL 8518901 (N.D. Tex. Dec. 7, 2023) ..................................................... 21

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990)..................................................................... 17

*Streber v. Hunter,*
   221 F.3d 701 (5th Cir. 2000) ................................................................... 13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)............................................................................. 5

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ............................................................. 5, 6, 18

*Utah Ret. Sys. v. McCollum*,
   No. 21-20312, 2023 WL 8649878 (5th Cir. Dec. 14, 2023)........................................ 11

**Statutes**

15 U.S.C. §78u–4(a)(6)............................................................................ 6

15 U.S.C. §78u- 4(a)(4) ......................................................................... 20

**Rules**

Fed. R. Civ. P. 23.............................................................................. 12

Fed. R. Civ. P. 23(h) ......................................................................... 1, 4

**Other Authorities**

*Report of Third Circuit Task Force: Court Awarded Attorney Fees*,
   108 F.R.D. 237 (1986) .......................................................................... 6

*The Ethical Imperative of A Lodestar Cross-Check: Judicial Misgivings About
   "Reasonable Percentage" Fees in Common* Fund Cases,
   18 Geo. J. Legal Ethics 1453 (2005)............................................................ 6

Pursuant to Fed. R. Civ. P. 23(h) of the Federal Rules of Civil Procedure ("Rule 23"), Court-appointed Class Counsel The Rosen Law Firm P.A. ("Lead Counsel[1]") hereby respectfully move for: (i) an award of attorneys' fees for Lead Counsel in the amount one-third of the Settlement Amount of the Settlement Fund, or $2,100,000; (ii) payment of $102,695.15 for expenses reasonably and necessarily incurred by Counsel in prosecuting and resolving the above-captioned securities class action ("Consolidated Actions"); and (iii) payment in the aggregate amount of $15,000 to Court-appointed Co-Lead Plaintiffs Eric Bender and Nadar Misri, along with Additional Plaintiff Phillip Laudino (collectively, "Plaintiffs") for time and expenses directly related to their representation of the Settlement Class in the Litigation, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.   NATURE AND STAGE OF THE PROCEEDING

In a separate, contemporaneous motion, Plaintiffs seek final approval of a proposed $6,300,000 cash Settlement with Defendants Vertex Energy, Inc. ("Vertex" or "Company"), Benjamin Cowart ("Cowart"), and Chris Carlson ("Carlson") (collectively, "Defendants"). If approved, the Settlement will resolve all claims in these Consolidated Actions. By this Motion, Lead Counsel moves for an award of attorneys' fees and expenses to Lead Counsel, Liaison

---

[1]All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation of Settlement dated April 18, 2025 ("Stipulation") (Dkt. No. 72), The Declaration of Gonen Haklay in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses and Award To Plaintiffs (the "Haklay Declaration" or "Haklay Decl."), filed concurrently with this motion, or the Amended Complaint (Dkt. No. 49). All citations to "¶_" and "Ex.___" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Haklay Declaration.

Counsel,[2] and Additional Counsel,[3] and awards to Plaintiffs, reimbursing them for time and effort they dedicated to the class.

## II.    STATEMENT OF ISSUES TO BE RULED UPON

1.    Whether the Court should approve Lead Counsel's request for an award of attorneys' fees.

2.    Whether the Court should approve Lead Counsel's and Liaison Counsel's request for litigation expenses.

3.    Whether the Court should approve awards to Plaintiffs for their time and expenses in connection with their prosecution of the Consolidated Actions on behalf of the Settlement Class, as permitted by the PSLRA.

## III.    SUMMARY OF THE ARGUMENT

Lead Counsel has litigated this case since the spring of 2023 on an entirely contingent basis against experienced and well-respected attorneys. The $6.3 million proposed Settlement, if approved by the Court, represents a favorable outcome for the Settlement Class. The Settlement is particularly beneficial in light of the significant litigation risks present here.

To achieve the recovery here, Lead Counsel devoted resources, pursuing this litigation zealously and competently, by, among other things: (a) conducting a detailed investigation of potential claims against Defendants that resulted in the filing of Plaintiffs' Complaint in *Bender v. Vertex Energy, Inc. et. al.*, Case No. 4:23-cv-2145 (S.D. Tex.); (b) moving for consolidation and appointment of Lead Plaintiff and Lead Counsel;  (c) researching and filing Plaintiffs' operative Amended Class Action Complaint ("Complaint"); (d) overseeing investigative interviews of witnesses, including former employees; (e) opposing Defendants' motions to dismiss; (f)

---

[2] Liaison Counsel is Condon Tobin Sladek Sparks Nerenberg PLLC.

[3] Additional Counsel is the Schall Law Firm.

representing the Settlement Class's claims in Vertex bankruptcy proceedings, including preserving certain claims and insurance proceeds in that regard; (g) consulting with a subject matter expert on the Complaint's allegations and an expert consultant on damages and loss causation; and (h) engaging in settlement negotiations with Defendants, ultimately settling the case, and documented the Settlement.

Lead Counsel undertook these efforts, achieving the Settlement in the face of significant litigation risks. Throughout the proceedings, Defendants denied that any of their statements were false or that there was any wrongdoing. In light of this, substantial risks existed that Plaintiffs would be unable to prove the falsity and materiality of Defendants' alleged misstatements; Defendants' scienter to establish their Exchange Act claims; and that the alleged misstatements caused Plaintiffs' losses. Further, risk remains whether Plaintiffs would defeat Defendants' motion to dismiss, whether the Settlement Class would be certified, whether summary judgment would be defeated, and whether Plaintiffs would prevail at trial, or on the inevitable appeal.

Accordingly, Plaintiffs request one-third of the Settlement Amount and payment of litigation expenses in the amount of $102,695.15.[4] As discussed below, the requested fee is fair and reasonable and within the range of fees awarded in comparable class action settlements, either as a percentage of the Settlement or on a lodestar/multiplier basis.

The reaction of the Settlement Class to date also supports the request. Pursuant to the Court's Preliminary Approval Order (Dkt. No. 75). A copy of the Long Notice and Postcard Notice have been sent to potential Settlement Class Member which advised potential Settlement Class Members that Lead Counsel would seek fees up to one-third of the Settlement Amount, or

---

[4] This total includes reimbursement of expenses to the Condon Tobin firm in the amount of $629.50. *See* Ex. 7 ("Cochran Decl.").

$2,100,000, and expenses. While the deadline for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the attorneys' fees or expenses set forth in the Notice have been received.

For all the reasons set forth below, Lead Counsel respectfully requests that the Court approve its motion for attorneys' fees and expenses.

## IV. LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

Pursuant to Rule 23(h) this Court may award reasonable attorney's fees, upon motion made under Rule 54(d)(2). Lead Counsel's thorough and sustained effort was critical in obtaining a substantial and certain recovery for the Settlement Class. As such, Lead Counsel respectfully requests that the Court grant its request of $2,100,000 in attorneys' fees from the Settlement's common fund.

### A. This Court Should Award Attorneys' Fees Should from the Settlement Amount

Following the Supreme Court, which "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), the Fifth Circuit has applied the "common fund" doctrine for decades. *See Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) ("it is well settled that the 'common benefit' or 'common fund' equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts"). Fee awards from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014).

Further, the Supreme Court has emphasized that private securities actions such as these Consolidated Actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313, 318–19 (2007). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "the very real risk that no payment would be forthcoming imposed a tremendous risk factor on counsel for the plaintiffs." *Nelson v. Waring*, 602 F. Supp. 410, 416 (N.D. Miss. 1983); *see also In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 494 (E.D. La. 2020) ("an award of attorney fees is necessary in all settlements of this nature both to reward the attorneys for their years of hard work and to encourage other attorneys to take on complex, challenging, and meaningful cases in the future.").

**B.      The Court should Award Attorneys' Fees Using the Percentage of Recovery Method.**

Fees awarded to counsel from a common fund can be determined under either the percentage-of-the-fund method or the lodestar method. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) (district courts have "the flexibility to choose between the percentage and lodestar methods in common fund cases"). Despite this, "district courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the 'preferred method.'" *Id.* at 643 (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *See also Burnett v. CallCore Media, Inc.*, 2024 WL 3166453, at *5 (S.D. Tex. June 25, 2024) (the percentage method for determining fees is generally "the preferred method" in this Circuit "because it aligns the interests between class counsel and the class members, encouraging successes and penalizing failure"). Conversely, the lodestar method has been called "difficult to apply, time-consuming to administer, inconsistent in result, and capable

of manipulation." *Manual on Complex Litigation* (4th) §14.121; *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) ("Numerous courts and commentators have stated that the percentage method is vastly superior to the lodestar method for a variety of reasons, including an incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court.").[5]

Additionally, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u–4(a)(6). "[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re OCA, Inc. Sec. & Derivative Litig.*, No. CIV.A.05-2165, 2009 WL 512081, at *19 (E.D. La. Mar. 2, 2009) citing *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005)); *see also Union Asset Mgmt.*, 669 F.3d at 643 (noting the "near-universal adoption of the percentage method in securities cases" following the passage of the PSLRA).

Finally, the Court could "conduct a rough lodestar cross check as is the customary practice to ensure that the requested amount of attorney's fees is reasonable." *Evans v. TIN, Inc.*, 2013 WL 4501061, at *6 (E.D. La. Aug. 21, 2013); *Xarelto,* 2020 WL 1433923, at *4 ("the fee arrived at by

---

[5] Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of A Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 Geo. J. Legal Ethics 1453, 1456 (2005) summarizing *Report of Third Circuit Task Force: Court Awarded Attorney Fees*, 108 F.R.D. 237, 246-49 (1986) (identifying a number of deficiencies with the lodestar method, including: (1) increasing the workload of the judicial system; (2) lack of objectivity; (3) a sense of mathematical precision unwarranted in terms of the realities of the practice of law; (4) ease of manipulation by judges who prefer to calculate the fees in terms of percentages of the settlement fund; (5) encouraging duplicative and unjustified work; (6) discouraging early settlement; (7) not providing judges with enough flexibility to award or deter lawyers so that desirable objectives, such as early settlement, will be fostered; (8) providing relatively less monetary reward to the public interest bar; and (9) confusion and unpredictability in administration.); *see also, In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2020 WL 1433923, at *4 (E.D. La. Mar. 24, 2020).

the percentage method is cross-checked by the lodestar method utilizing the Johnson factors.) Given the fact that this securities class action is a "paradigmatic common fund case," *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 852, 860 (W.D. Pa. 1995) (internal quotation omitted), Lead Counsel respectfully submits that the Court should apply the percentage-of-fund method, cross-checked against the lodestar.

Moreover, an award of one-third of the Settlement Amount is appropriate in this case. Under the percentage-of-recovery method, the Court determines the benchmark percentage to be applied to the actual monetary value conferred to the class members by the settlement. *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *1 (W.D. La. Nov. 8, 2012). "After setting the benchmark, the Court applies the *Johnson* factors to determine whether a positive or negative adjustment of the benchmark [is] warranted." *Id.* at *1 (internal quotation omitted). Here, the value of the settlement is $6,300,000 in cash, plus interest earned from the date the settlement funds were deposited in the escrow account. Lead Counsel respectfully submits that a benchmark percentage of one-third of the $6,300,000 be applied without adjustment.

Lead Counsel's one-third request falls within the range of percentage fees routinely awarded in the Fifth Circuit. *See Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Celeste Neely*, 2022 WL 17736350, at *11 (E.D. Tex. Dec. 16, 2022) (finding that one-third of the settlement is "squarely in the accepted range"); *Glock v. FTS Int'l*, 2021 WL 1422714, at *1 (S.D. Tex. Apr. 13, 2021) (Rosenthal, J.) (awarding 33% plus interest of a $9.875 million settlement); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *7 (N.D. Tex. Apr. 25, 2018) (granting one-third fee with interest); *Kohn v. Loren D. Stark Company, Inc.*, 4:23-CV-03035, (Dkt. No. 50), (S.D. Tex. Dec.

7

17, 2024) (granting a request of one-third); *Prause v. TechnipFMC*, 2021 WL 6053219, at \*1-2

(S.D. Tex. Mar. 23, 2021) (awarding 33% plus interest of $19.5 million settlement).

   **C.**  **The *Johnson* Factors Confirm the Requested Fee is Fair and Reasonable**

   In *Johnson*, 488 F.2d at 717–719, the Fifth Circuit set forth non-dispositive factors courts

should consider in determining the reasonableness of class counsel's fee request:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

These factors are not absolute and "not every [*Johnson*] factor need be necessarily considered."[6]

*Celeste*, 2022 WL 17736350, at \*13 (citing *In re Combustion, Inc.*, 968 F. Supp. 1116, 1135

(W.D. La. 1997)). Instead, "[t]he relevance of each of the *Johnson* factors will vary in any

particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has

left it to the lower court's discretion to apply those factors in view of the circumstances of a

particular case." *Schwartz*, 2005 WL 3148350, at \*28; *Buettgen v. Harless*, No. 3:09-CV-00791-

K, 2013 WL 12303143, at \*11 (N.D. Tex. Nov. 13, 2013).

   Here, because each of the relevant *Johnson* factors weighs in favor of the requested fee, a

fee of one-third of the Settlement Amount—representing a lodestar multiplier or 1.28—is

justified.

---

[6] Indeed, one *Johnson* factor, the "time limitations imposed by the client or the circumstances" is not relevant in this case and accordingly will not be examined here.

### 1.    The Time and Labor Required

As detailed herein, and in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, Lead Counsel prosecuted the Consolidated Actions on a wholly contingent basis. Lead Counsel's litigation efforts on behalf of the Settlement Class included: (a) filing Plaintiffs' Initial Complaint in *Bender v. Vertex Energy, Inc. et. al.*, Case No. 4:23-cv-2145 (S.D. Tex.); (b) filing Plaintiffs' operative Amended Class Action Complaint ("Complaint"); (c) moving for consolidation and appointment of Lead Plaintiff and Lead Counsel; (d) conducting a thorough investigation of potential claims against Defendants, including overseeing investigative interviews of witnesses, including former employees; (e) opposing Defendants' motions to dismiss; (f) representing the Settlement Class's claims in Vertex bankruptcy proceedings, including preserving certain claims and insurance proceeds in that regard; (g) consulting with subject matter experts on the Complaint's allegations as well as experts on damages; and (h) engaging in settlement negotiations with Defendants, ultimately settling the case and documenting the Settlement. ¶15.

The parties reached the Settlement only after Lead Counsel prepared a comprehensive mediation statement, and engaged in a full-day mediation with Defendants on November 6, 2024. Though no settlement was reached that day, Lead Counsel continued to negotiate with Defendants with the aid of the mediator until the Parties accepted the mediator's proposal on December 5, 2024, agreeing on the specific terms of the Settlement. The Parties signed a Memorandum of Understanding on February 4, 2025, following which Lead Counsel drafted the settlement papers. ¶¶17, 38.

The efforts expended to complete these tasks and undertaken at risk, given the contingency-based nature of Lead Counsel's representation. To date, Lead Counsel, Liaison Counsel, and

9

Additional Counsel have spent 1,340.7 hours prosecuting this case. *See* Exhibits 2, 7, 8 to Haklay Decl. They have also incurred $102,695.15 in unreimbursed litigation expenses. *Id*. These expenses were required to achieve the settlement.

In addition, the timing of the Settlement itself is a benefit that Lead Counsel has conferred on the Settlement Class. Achieving a beneficial outcome for the Settlement Class at this stage of the litigation, weighs in favor of awarding the requested fee. *See Burnett*, 2024 WL 3166453, at *6 *v. CallCore Media, Inc.,* No. 4:21-CV-03176, 2024 WL 3166453, at *6 (S.D. Tex. June 25, 2024) (efficiency and effectiveness should be rewarded) (citing *Schwartz*, 2005 WL 3148350, at *29); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (Rosenthal J.) (an emphasis on the number of hours would penalize counsel for obtaining early settlement). As such, the Court should find that a settlement at this stage benefits the Settlement Class, and that the labor and time Lead Counsel invested in this case supports the requested fee.

### 2.        Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Lead Counsel's request for attorneys' fees. As a general matter, securities litigation is "notoriously difficult and unpredictable." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (internal quotation omitted); *OCA*, 2009 WL 512081, at *21 ("Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult"); *see also Celeste,* 2022 WL 17736350, at *4 ("That is especially true when the case involves complex issues like those presented in this consolidated securities class action. Securities claims are particularly 'difficult to prove' because of the high bar for establishing falsity and scienter"). In addition, as described below, these

10

Consolidated Actions involved complex issues of law and fact relating to energy derivatives in the oil and gas field.

### a)        Liability Could be Difficult to Prove

Plaintiffs bear the burden of establishing each of the elements of the claims brought against Defendants under the Securities Exchange Act of 1934 ("Exchange Act"). Although Plaintiffs believe the allegations of the operative complaint would ultimately translate into a strong case for liability, securities cases are "notoriously difficult and unpredictable." *In re Apache Corp. Sec. Litig.*, 2024 WL 4881432, at *6 (S.D. Tex. Nov. 25, 2024) citing *Maher*, 714 F.2d at 451.

These legal challenges included establishing that Defendants made misstatements or omissions of material fact during the alleged Settlement Class Period, that Defendants acted with scienter with regards to the claims under the Exchange Act, the need to prove loss causation, and the need to prove damages. Post-PSLRA rulings make clear that the risk of failing to establish these elements–and receiving no recovery at all–has increased exponentially since the statute's enactment in 1995. *See Schwartz*, 2005 WL 3148350, at *29 ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA") (citing *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

Defendants asserted that they did not mislead about their finances relating to the Mobile refinery. Additionally, Defendants argued that Plaintiffs would be unable to prove scienter because Defendants did not knowingly or recklessly misrepresent the issues with their hedges. Simply put, establishing these elements would be a substantial hurdle. *Utah Ret. Sys. v. McCollum*, No. 21-20312, 2023 WL 8649878, at *3 (5th Cir. Dec. 14, 2023); *Coggins v. Camber Energy Inc.*, 693 F. Supp. 3d 736 (S.D. Tex. 2023); *Genesee Cnty. Employees' Ret. Sys. v. FirstCash Holdings Inc.*, 667 F. Supp. 3d 295 (N.D. Tex. 2023).

11

**b)    Obtaining Class Certification and Proving Loss Causation and Recoverable Damages Could be Difficult**

To obtain a class-wide recovery, Plaintiffs would be required to achieve and maintain through trial class certification pursuant to Fed. R. Civ. P. 23, showing market efficiency, overcoming any price impact argument, and showing a common damages methodology. Defendants could contest class certification at the time of the original motion, at summary judgment, and again at trial. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) (defendants may rebut the presumption of reliance at the class certification stage). To prevail at trial, Plaintiffs would also be required to prove the amount of the artificial inflation of Vertex common stock throughout the Settlement Class Period and that it was removed by the disclosure of the true facts. *See Lindsey v. Memphis-Shelby Cnty. Airport Auth.*, 229 F.3d 1150 (6th Cir. 2000) (approving settlement and highlighting risk of proving damages).

Loss causation and damages are not elements of a securities claim that are within the general knowledge of the jurors. Consequently, following a battle of experts on these issues, there is a significant risk that the jury would award substantially less damages than the maximum damages identified by Lead Counsel's expert which assumes that every element of the Settlement Class's liability and damages theories are accepted by the jury as being correct and recoverable. Thus, the viability of these preliminary estimates as an actual calculation for damages could be affected by many factors that arise in the litigation, including Defendants' rebuttals and defenses to Plaintiffs' damage calculations and expert testimony. Before the jury even considers conflicting testimony, it is possible that Plaintiffs' proposed expert testimony could be the subject of a *Daubert* motion or be deemed otherwise inadequate, further supporting the guaranteed Settlement. *See In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 782 (S.D. Tex. 2003) (granting summary

judgment where plaintiff's expert report was insufficient to establish loss causation as a matter of law).

While Lead Counsel believes that there exists a firm basis for an expert to opine on the measure and amount of per share damages, it is possible that, in the unavoidable "battle of experts," a jury might disagree with the Settlement Class's expert, or find Defendants' expert more persuasive. *See, e.g., Streber v. Hunter,* 221 F.3d 701, 726 (5th Cir. 2000), *reh'g en banc denied*, 233 F.3d 576 (5th Cir. 2000) (jury can believe whichever expert it finds more credible); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015) ("On the issue of damages, a trial would likely have turned heavily on a battle of the experts between the parties' respective economists. It is impossible to predict which party's model of damages—if either—the jury would credit."). Consequently, "[a]lthough Plaintiffs maintain they would likely be successful on the merits at trial," the uncertainty of prevailing supports approval of the settlement. *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 960 (E.D. Tex. 2000). The difficulties of obtaining class certification and maximum damages support the requested fee award.

### 3. Lead Counsel Possesses the Experience, Reputation, and Ability Necessary to Prosecute these Consolidated Actions Zealously and Competently

The third and the ninth *Johnson* factors, the skill required and the experience, reputation, and ability of the attorneys, also support the requested fee award. Lead Counsel has many years of experience in complex federal civil litigation, particularly the litigation of shareholder, securities, and other class actions. ¶¶1, 45, 71; *See also,* (Dkt. No. 4-1). Lead Counsel's experience enabled them to conduct extensive investigation into the relevant facts and identify the complex issues of accounting and damages involved in this case and formulate strategies to prosecute it effectively. Based upon their diligent efforts, and their skill and reputations, they were able to negotiate a very favorable result.

13

It is also important to recognize that Defendants were represented by highly-experienced lawyers from a prominent and well-respected national law firm, Steptoe LLP. The ability of Lead Counsel to obtain a fair, adequate, and reasonable settlement for Plaintiffs and the Settlement Class in the face of such formidable legal opposition confirms the quality of their representation. Accordingly, this factor also supports the requested percentage. *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at *6 (W.D. La. Mar. 3, 2015) citing *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *7 (N.D. Tex. Aug. 4, 2011) ("[B]ecause of the extremely effective work of opposing counsel … [t]he skill required here … certainly justifies the contemplated award."). Lead Counsel's experience, reputation, and ability support the requested fee award.

### 4.     Preclusion of Other Employment.

As noted above, Lead Counsel, Liaison Counsel, and Additional Counsel spent 13,340.7 hours prosecuting the Consolidated Actions. Those hours represented time that counsel could have devoted to other matters. Accordingly, this factor supports the requested fee. *See, Evans on behalf of United Dev. Funding IV v. Greenlaw*, 2019 WL 7879735, at *3 (N.D. Tex. Feb. 27, 2019); *Burford*, 2012 WL 5471985, at *3. ("The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter… This factor weighs in favor of a substantial fee award.").

### 5.     The Customary Fee for Similar Work in the Community

As set forth in Section IV.B, supra, the one-third fee requested in this case is commonly awarded for similar work in the Fifth Circuit. Therefore, this factor weighs in favor of approving a fee of one-third of the common fund.

14

**6.    Whether the Fee is Fixed or Contingent**

Lead Counsel undertook these Consolidated Actions on a contingency-fee basis, carrying both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or expense outlays for the duration of the Consolidated Actions. Contingency risk alone is a factor supporting the requested fee. As the Fifth Circuit has recognized "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Celeste*, 2022 WL 17736350, at *13 citing *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir. 1981)*,* overruled on other grounds by *Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.,* 790 F.2d 1174 (5th Cir. 1986). Indeed, the risk of loss in this case is not illusory. As stated above, securities claims are extremely complicated and require expert testimony to prove. Success is never assured. Despite the risk that Lead Counsel's significant time and effort could go uncompensated, Lead Counsel diligently prosecuted the Settlement Class's claims. Consequently, this factor weighs in favor of approving Lead Counsel's fee request. *Id.*

**7.    The Amount Involved and the Results Obtained**

As discussed above, assuming that every element of the Settlement Class's liability and damage theories were accepted by the jury as being correct and recoverable, a preliminary damage study determined that the maximum recovery taking into account the statistically significant stock drops would be $180,000,000. Thus, Lead Counsel has recovered approximately 3.49% of the class's maximum provable damages, and far more than the damages Defendants asserted the Settlement Class suffered (*i.e.*, $0) given their belief that Plaintiffs would be unable to demonstrate the falsity and materiality of the alleged misstatements. In light of the many aforementioned risks involved in this litigation, this is an excellent result. The achieved here is further heightened by

15

the fact that Vertex is a bankrupt company. *See City of Omaha Police & Fire Ret. Sys.*, 2015 WL 965696, at \*6 (*citing In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) ("The typical recovery in most class actions generally is three-to-six cents on the dollar.")).

### 8.    The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. While Lead Counsel did not consider this case to be "undesirable," there are substantial risks inherent in financing and prosecuting contingent litigation of this type and Lead Counsel knew that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at \*12 (the "risk of non-recovery and undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee has been held to make a case undesirable, warranting a higher fee") (ellipsis in original). Thus, the "undesirability" of the case also weighs in favor of the requested fee. *See, e.g., Melby v. Am.'s MHT, Inc.*, 2018 WL 10399003, at \*4 (N.D. Tex. July 5, 2018) (where a case "involved lengthy investigation through informal discovery, a host of difficult factual and legal issues, and a real risk of no recovery" it speaks to the desirability of the case.); *Billitteri*, 2011 WL 3585983, at \*8 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee); *Braud v. Transp. Serv. Co. of Illinois*, 2010 WL 3283398, at \*13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award").

16

**9.      The Nature and Length of the Professional Relationship with the Client**

Lead Counsel has represented Plaintiffs in this litigation since 2023. Plaintiffs have been actively involved in this litigation and approved and support the Settlement. Throughout the litigation, Lead Counsel has been in communication with Plaintiffs apprising them of the status of the case as well as reviewing and discussing pleadings, motions, briefs, and investigations.

## V.      AWARDS IN SIMILAR CASES

As discussed above in Section IV.B the requested fee of one-third is consistent with awards granted in class action cases. Hence, this factor supports the requested fee award.

**A.      The Settlement Class's Reaction to The Fee Request**

The claims administrator undertook a robust program to provide notice to potential Settlement Class Members, publishing notice on *GlobeNewswire* and mailing and emailing 28,445 notices throughout the world. *See* Declaration of Margery Craig Concerning: (A) Mailing/Emailing of Notices; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl.") at ¶¶8, 10. To date, not one Settlement Class member has objected to the Settlement or the requested attorney's fees. *Id*. at ¶14. The Long Notice and Postcard Notice sent to the Settlement Class expressly stated that Lead Counsel would seek up to one-third of the Settlement Amount. Although not a *Johnson* factor, many courts have recognized that the absence, or a minimal number, of objections to a fee request is significant evidence that the requested fee is fair. *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (even when 29 members of a 281 person class (i.e., 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request").

**B.     A Lodestar Cross-Check Confirms the Reasonableness of the Request Fee**

In addition to applying the percentage approach to determine attorneys' fees in common fund cases like this one, courts in this Circuit often apply the lodestar method as a "rough cross check" to confirm that the fee determined under the percentage approach is reasonable. *Evans*, 2013 WL 4501061, at *6; *Xarelto*, 2020 WL 1433923, at *4. The lodestar multiplier is calculated by dividing the attorneys' fees that class counsel seeks by class counsel's associated lodestar. *Id.* at *9. In performing a lodestar analysis, a district court may rely on summaries submitted by the attorneys and need not review actual billing records. *See Halliburton,* 2018 WL 1942227, at *9 ("courts using a lodestar as a cross-check to the percentage method have relaxed the degree of scrutiny applied to counsel's billing records").

Here, the cumulative number of hours expended by Lead Counsel, Laison Counsel, and Additional Counsel is 1,346.1, and the resulting lodestar for the services performed is $1,646,192.90.

"In the Fifth Circuit, courts set the lodestar multiplier by applying the *Johnson* factors." *Union Asset Mgmt.,* 669 F.3d at 643 n.26. Here, eleven of the twelve *Johnson* factors apply – and all of them favor an upward adjustment of the lodestar to reflect the significant risks undertaken by Lead Counsel herein to obtain a substantial benefit for the Settlement Class. The requested fee of $2,100,000 thus equates to a multiplier of approximately 1.28.

This multiplier is well within the range of reasonableness. Multipliers of "1 to 4 [are] typically approved by courts within [the Fifth] circuit." *Di Giacomo*, 2001 WL 34633373, at *11 (approving 5.3 multiplier); *Plunkett v. FirstKey Homes LLC*, 2024 WL 5315330 (N.D. Tex. Nov. 21, 2024), *report and recommendation adopted sub nom. Plunkett v. First Key Homes LLC*, 2024 WL 5075065 (N.D. Tex. Dec. 11, 2024). Accordingly, the lodestar cross check supports this Court's granting the attorneys' fees Lead Counsel seeks.

18

For those reasons, pursuant to Rule 23(h) and the PSLRA, this Court should grant Lead Counsel's fee request of one-third of the Settlement Amount or $2.1 million.

## VI.   Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred in the Prosecution of these Consolidated Actions

Lead Counsel and Liaison Counsel also requests the reimbursement of $102,695.15 in unreimbursed, out-of-pocket expenses they reasonably and necessarily incurred prosecuting these Consolidated Actions. *Armstrong v. Kimberly-Clark Corp.*, No. 3:20-CV-3150-M, 2024 WL 1123034, at *6 (N.D. Tex. Mar. 14, 2024); *Schwartz*, 2005 WL 3148350, at *34; *Blackmon v. Zachary Holdings, Inc.*, 2022 WL 2866411, at *5 (W.D. Tex. July 21, 2022); (*City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *19 (S.D.N.Y. May 9, 2014). *See Jenkins*, 300 F.R.D. at 310–11 (awarding costs in addition to the percentage fee); *Di Giacomo*, 2001 WL 34633373, at *13 (same).

The majority of the expenses are attributable to expert, consultant, investigator, and travel fees. *See* Declaration of Jacob A. Goldberg on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses at ¶¶8-10 ("Goldberg Fee Decl."); Cochran Decl. ¶5. The Consolidated Actions involved complex issues, particularly in light of the series of complex financial nature of the crack spread and Defendants' hedges. Furthermore, they serve as the central basis of Plaintiffs' allegations of Defendants' violations of federal securities laws. Lead Counsel also retained a damages expert to consult on Defendants' assertion that the alleged misstatement Plaintiffs identified were not material and the declines in Vertex common stock were attributable to the statements about their finances. ¶¶47, 56, 80-81.

Because the Lead Counsel incurred these unreimbursed, out-of-pocket expenses with no guarantee of recovery, Lead Counsel had a strong incentive to keep them at a reasonable level and did so. Lead Counsel avoided unnecessary expenditures and economized wherever possible. All

19

unreimbursed expenses were essential to achieving the Settlement and should be reimbursed Additionally, the Long Notice and Postcard Notice informed Settlement Class Members that Lead Counsel and Liaison Counsel would seek reimbursement of expenses up to $115,00 and, to date, no objection to the expense application has been filed. Craig Decl. ¶14. The requested expenses should, therefore, be awarded. *See Celeste*, 2022 WL 17736350, at *15 ("Counsel further requests that these expenses be awarded out of the settlement fund in addition to… attorney's fees. Because no class member objected to the request, counsel diligently represented the class, and counsel incurred considerable expense with no guarantee of recovery, the Court finds that the requested amount is reasonable under the circumstances and will be awarded.")

Accordingly, this Court should grant Lead Counsel's request for reimbursement of unreimbursed, out-of-pocket expenses of $102,695.15.

## VI.   THE COURT SHOULD GRANT THE PROPOSED AWARDS TO PLAINTIFFS

Plaintiffs seek an award of $5,000 to each of the three Plaintiffs. The $15,000 total represents approximately two-tenths of 1% of the Settlement Amount. The PSLRA permits plaintiffs to seek an "[award of] reasonable costs and expenses (including lost wages) directly relating to the representation of the class …" 15 U.S.C. §78u- 4(a)(4). *See Buettgen*, 2013 WL 12303143, at *14 (courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.") (citing *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005)).

Plaintiffs have performed their duties with attentiveness and diligence. This included reviewing all pleadings, motions, and other documents, and frequently communicating with counsel concerning the status of the case, court documents, strategy, and settlement discussion. In

20

light of the work done by Plaintiffs, the amounts requested are eminently reasonable. Moreover, the request for the Plaintiffs award here is the same or less than awards granted in other cases, and there have been no objections to their payment. *See, e.g.*, *Shen v. Exela Techs., Inc.*, 2023 WL 8518901, at *2 (N.D. Tex. Dec. 7, 2023) (awarding $25,000 to lead plaintiff); *Deka Inv. GMBH v. Santander Consumer USA Holdings Inc.*, 2021 WL 118288, at *2 (N.D. Tex. Jan. 12, 2021) (awarding approximately $37,000 in total to lead plaintiffs); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2019 WL 6043440, at *2 (S.D. Tex. Feb. 13, 2019) (awarding over $56,000 to four institutional plaintiffs); *Halliburton*, 2018 WL 1942227, at *14 (awarding $100,000 as "compensation for the time [lead plaintiff] dedicated in supervising this action"); *Miller v. Glob. Geophysical Servs. Inc.*, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016) (awarding $15,000 to lead plaintiff); *In re Arthrocare Corp. Sec. Litig.*, 2012 WL 12951371, at *6 (W.D. Tex. June 4, 2012) (awarding $55,850 to plaintiff for time spent, inter alia, in "overseeing and communicating with Lead Counsel on a regular basis, reviewing and commenting on various pleadings, [and] sitting for depositions"). Accordingly, the Court should grant the awards Plaintiffs seek as reasonable and justified under the PSLRA.

## VII.   CONCLUSION

For the reasons stated above, in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, in any reply papers that may be filed in support of either motion,, and at the Settlement Hearing, Plaintiffs and Lead Counsel respectfully request that the Court: (a) award attorneys' fees in the amount of one-third of the Gross Settlement Fund, *i.e.* $2,100,000 in cash; (b) approve reimbursement of $102,695.15 in out-of-pocket, unreimbursed expenses; (c) grant awards of $5,000 to each Plaintiff for a total of $15,000.

21

Dated: June 25, 2025

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ *Gonen Haklay*
Gonen Haklay (pro hac vice)
Jacob A. Goldberg (pro hac vice)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
ghaklay@rosenlegal.com
jgoldberg@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

**CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC**

Stuart L. Cochran (Texas Bar No.: 24027936)
8080 Park Lane, Suite 700
Dallas, Texas 75231
Tel: 214.265.3800
Fax: 214.691.6311
scochran@condontobin.com

*Liaison Counsel for Plaintiffs and the Class*

**THE SCHALL LAW FIRM**

Brian Schall
2049 Century Park E #2460
Los Angeles, CA 90067
Tel: (310) 301-3335
Fax: (213) 519-5876
brian@schallfirm.com

*Additional Counsel*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2025 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/Gonen Haklay*
Gonen Haklay