UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ERIC BENDER and NADER MISRI, Individually and On Behalf of All Others Similarly Situated, | No.: 4:23-cv-02145 |
| Plaintiff, | CLASS ACTION |
| v. | District Judge Lee H. Rosenthal |
| VERTEX ENERGY, INC., BENJAMIN P. COWART, and CHRIS CARLSON, | |
| Defendants. | |

**DECLARATION OF GONEN HAKLAY IN SUPPORT OF (1) PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN
OF ALLOCATION, AND TO CERTIFY A CLASS FOR SETTLEMENT PURPOSES;
AND (2) PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS**

I, Gonen Haklay, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information, and belief:[1]

1.      I am counsel at The Rosen Law Firm, P.A., Lead Counsel for Co-Lead Plaintiffs Eric Bender and Nadar Misri, ("Lead Plaintiffs"), along with additional Plaintiff Phillip Laudino (collectively, "Plaintiffs") in the above- referenced Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto. I have thirty (30) years of experience, including ten (10) years focusing on securities class actions. I intend nothing in this Declaration to constitute a specific or general waiver of attorney-client privilege or any other applicable privilege or doctrine.

2.      I submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for (1) Final Approval of Class Action Settlement, Plan of Allocation, and to Certify a Class For

1

Settlement Purposes and (2) Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs.[1] I set forth herein relevant facts concerning these Consolidated Actions. I also set forth herein relevant facts supporting both that the Settlement is fair, reasonable, and adequate, that the notice program satisfied Fed. R. Civ. P. 23(c)(2) and 23(e)(1), the Private Securities Reform Act of 1995, 15 U.S.C. §78u-4(a)(7), and due process, that the Plan of Allocation is fair, and that Plaintiffs' requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs are reasonable.

3.      This Declaration sets forth the nature of the investigation, legal briefing and negotiations that led to the settlement with Defendants Vertex Energy, Inc. ("Vertex" or "Company"), Benjamin Cowart and Chris Carlson (Cowart and Carlson, together, the "Individual Defendants," and with Vertex, "Defendants"). This declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court and why Lead Counsel's[2] fee and expense request is reasonable and should be approved by the Court.

4.      The Settlement completely resolves the Consolidated Actions as to all claims against all Defendants, providing for a cash payment by and on behalf of Defendants in the amount of $6,300,000, in exchange for full mutual Releases.

5.      On April 21, 2025, the Court entered an Order preliminarily approving the Settlement of this action, preliminarily certifying this action as a class action for the purposes of settlement and approving the form and manner of providing notice to potential Settlement Class Members ("Preliminary Approval Order"). Dkt. No. 75.

6.      Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys'

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings set forth in the Stipulation and Agreement of Settlement filed with the Court on April 18, 2025 ("Stipulation"). Dkt. No. 72.

[2] "Lead Counsel" means Lead Counsel The Rosen Law Firm, P.A. "Liaison Counsel" means Condon Tobin Sladek Thornton Nerenberg PLLC. "Additional Counsel" means The Schall Law Firm.

fees to Rosen Law of one-third of the Settlement Fund, or $2,100,000, reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting the Consolidated Actions in the amount of $102,695.15, and awards to Plaintiffs totaling $15,000.

7.      Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl.").

8.      Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Jacob A. Goldberg on behalf of Rosen Law Concerning Attorneys' Fees and Expenses ("Goldberg Fee Decl.").

9.      Attached hereto as Exhibit 3 is a true and correct copy of the Declaration of Lead Plaintiff Eric Bender ("Bender Decl.").

10.      Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of Lead Plaintiff Nader Misri ("Misri Decl.").

11.      Attached hereto as Exhibit 5 is a true and correct copy of the Declaration of Additional Plaintiff Phillip Laudino ("Laudino Decl.").

12.      Attached as Exhibit 6 is a true and correct copy of the Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review, published by NERA on January 24, 2023 ("NERA Report").

13.      Attached as Exhibit 7 is a true and correct copy of the Declaration of Stuart Cochran on behalf of Condon Tobin Sladek Thornton Nerenberg PLLC Concerning Attorneys' Fees and Expenses ("Cochran Fee Decl.").

14.      Attached as Exhibit 8 is a true and correct copy of the Declaration of Brian Schall on behalf of The Schall Law Firm Concerning Attorneys' Fees and Expenses ("Schall Fee Decl.").

## I.      SUMMARY

15.      Plaintiffs and their counsel have litigated this action since 2023. The Settlement was reached only after Lead Counsel: (a) conducted a detailed investigation of potential claims against Defendants that resulted in the filing of Plaintiffs' Initial Complaint in *Bender v. Vertex Energy, Inc. et.*

*al.,* Case No. 4:23-cv-2145 (S.D. Tex.); (b) filed Plaintiffs' operative Amended Class Action Complaint ("Complaint"); (c) moved for consolidation and appointment of Lead Plaintiff and Lead Counsel; (d) oversaw investigative interviews of witnesses, including former employees; (e) opposed Defendants' motion to dismiss; (f) represented the Class's claims in Vertex's bankruptcy proceedings, including preserving certain claims in that regard; (g) consulted with experts on the subject matter of the case, as well as consulted an expert on damages; and (h) engaged in settlement negotiations with Defendants, ultimately settling the case, and documented the Settlement.

16.     By the time the Settling Parties reached the Settlement, Plaintiffs and Lead Counsel had gained a full understanding of the strengths and weaknesses of the case. Even though notices of the settlement of this action were sent to 28,445 potential class members, and notice was duly disseminated electronically over *GlobeNewswire*, as of the date of this writing, no class member has objected to the Settlement, and no class member has requested exclusion from the Settlement. *See* Craig Decl. at ¶¶6-8,14.

17.     On November 6, 2024, the Parties participated in a mediation with mediator David M. Murphy ("Murphy") of Philips ADR Enterprises P.C. Though the Consolidated Actions were not settled on that date, the Parties continued discussions with mediator Murphy, and on December 5, 2024, all Parties accepted a mediator's proposal for $6,300,000 in cash to settle the Consolidated Actions, in exchange for a full release of all claims against all Defendants. The Parties executed a Memorandum of Understanding on February 4, 2025.

18.     The Settlement confers an immediate and substantial benefit on the Settlement Class. At the same time, the certainty of the Settlement eliminates the real risk that continued litigation against the Defendants might yield nothing for Plaintiffs and the Settlement Class. Plaintiffs and the Settlement Class face substantial risks in successfully prevailing on the issues of damages, falsity, scienter, and loss causation.

19.    Defendants have alleged throughout that Plaintiffs and the Settlement Class cannot establish liability. First, Defendants contend that Plaintiffs and the Settlement Class suffered no damages, claiming that Defendants did not make any misstatements about the hedges related to the Mobile refinery. They further claim their statements were not materially false, were forward looking, or puffery. Defendants also argue that Plaintiffs would not be able to prove scienter because Defendants did not knowingly or recklessly misrepresent the impact of the Mobile refinery hedges. The risks posed by these arguments were material and could have resulted in no recovery or a substantially smaller recovery for Plaintiffs and the Settlement Class.

20.    The $6,300,000 settlement represents 3.49 percent of Plaintiffs' maximum class-wide damages based on Plaintiffs' best-case scenario of damages (*i.e.*, defeating all of Defendants' arguments) as determined by Lead Counsel in consultation with a damages consultant. Defendants disagree with Plaintiffs' estimation of damages.

21.    The Plan of Allocation, set out in the Long Notice (Dkt. No. 72-2) explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan was designed, with the help of a damages expert, to distribute the Settlement Fund consistent with the claims alleged in this case. Each claimant's loss is calculated based on the number of shares purchased or otherwise acquired during the Settlement Class Period and each Recognized Loss is divided by the total losses of all Authorized Claimants, multiplied by the total amount of the Net Settlement Fund. The Plan of Allocation does not discriminate between Settlement Class Members and all are provided their pro rata recovery.

22.    Lead Counsel has prosecuted the Consolidated Actions on a wholly contingent basis and, thus, has advanced or incurred all the litigation expenses, charges, and costs associated with that prosecution. Lead Counsel undertook substantial risk in doing so and, to date, has not received any compensation for their efforts. Accordingly, requested attorneys' fees of one-third ($2,100,000) of the

Settlement Amount, is reasonable and within the range of awards in class litigation of this type. The fee requested is fair in light of the results achieved, the risks involved in the litigation, and similar awards in this type of litigation. Indeed, when cross-checked with the lodestar method, the reasonableness of the fee request is confirmed by counsel's lodestar multiplier of 1.28 which is within the range of multipliers typically awarded in contingent fee class action cases.

23.    Likewise, regarding the requested fee and expenses, the Long Notice, Postcard Notice, and Summary Notices advised Settlement Class Members that Plaintiffs would seek an award of up to $15,000 in total ($5,000 each) for their time and effort in the prosecution and oversight of this action. As discussed below, Plaintiffs were involved throughout the litigation in communicating with counsel.

24.    The Notice to Settlement Class Members stated that Lead Counsel would seek a fee of up to one-third of the Settlement Amount, reimbursement of expenses, and an award for Plaintiffs. That no objections were received to the requested fee, as of the date of this writing, confirms the reasonableness of the requested fee. Craig Decl. at ¶14.

25.    Lead Counsel's request for reimbursement of out-of-pocket expenses of $102,695.15 is also reasonable, fair, and should be approved. These expenses were required and incurred in the prosecution of this action.

26.    For the reasons set forth herein and in the supporting memorandum filed herewith, this Court should find that the Settlement and Plan of Allocation and request for attorneys' fees, reimbursement of expenses, and award to Plaintiffs are fair, reasonable, and adequate and should be approved.

27.    The action meets each of the requirements necessary to certify the Settlement Class under Fed. R. Civ. P. 23(a) and 23(b)(3). This Court should, therefore, finally certify the Settlement Class for settlement purposes.

## II.    BACKGROUND OF THE LITIGATION

**A.      Overview of Plaintiffs' Claims**

28.    The Settlement covers violations of Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 on behalf of all persons other than Defendants who purchased or otherwise acquired common stock of Vertex during the period from May 10, 2022, through August 8, 2022, both dates inclusive.

29.    Plaintiffs' allegations arise from the hedges on the Mobile refinery purchased by Vertex. Defendants spoke glowingly about the first 40 days of their ownership of the refinery, bragging that results would allow them to pay off the purchase price in a single quarter, and that the refinery was already generating "strong EBITDA." In truth, however, the second quarter, as one analyst described it, was a "debacle." By May 9, 2022, the crack spread hedging program that Defendants caused Vertex to enter, and that Defendants conceded they monitored and managed daily, had already caused the Company millions of dollars in realized and unrealized losses. Defendants knew this but investors could not, because Defendants were opaque in their disclosures about the hedging program.

30.    The truth began trickling out on August 9, 2022, before the market opened. Vertex filed a Form 8-K with the SEC that included its second quarter 2022 earnings release, and held an earnings conference call for analysts and investors. In the earnings release, and on the call, Vertex disclosed the massive losses incurred at the Mobile refinery during the second quarter of 2022. Vertex announced a net loss for the Company of $63.8 million. Vertex also announced that adjusted EBITDA for the Mobile refinery, even after adjusting for certain incurred losses, was only $63.6 million, compared to the guidance given just three months prior for EBITDA of $120-$130 million in the second quarter, a total shortfall of 50%. Vertex also withdrew its financial guidance for the remainder of fiscal year 2022 and fiscal year 2023.

31.    In response to this news, the price of Vertex common stock fell by $6.18 per share, or 44%, on August 9, 2022, on high trading volume of more than 27 million shares traded. The share price

continued to fall in subsequent days as the market digested the news, reaching a low of just $7.05 per share on August 11, 2022, roughly 50% below the closing price on August 8, 2022, and over 60% lower than the high of $18.10 per share in June 2022.

### B.    Procedural History

32.    On April 13, 2023, William C. Passmore filed *Passmore v. Vertex Energy, Inc*., *et al.,* Case No. 1:23-cv-128-TFM (S.D. Ala.) ("*Passmore* Action"), in the United States District Court for the Southern District of Alabama, alleging violations of the Securities Exchange Act of 1934 against Defendants. On May 26, 2023, Phil Levson filed *Levson v. Vertex Energy, Inc.*, Case. No. 1:23-cv-197-KD (S.D. Ala.) ("*Levson* Action"), in the same district, alleging substantially similar claims against the Defendants.

33.    On June 12, 2023, Plaintiff Bender filed *Bender v. Vertex Energy, Inc. et. al*., Case No. 4:23-cv-2145 (S.D. Tex.) ("*Bender* Action"), in the United States District Court for the Southern District of Texas, alleging substantially similar violations of the Securities Exchange Act of 1934, but insisting that venue was proper in this District. Dkt. No. 1 at 2.

34.    On July 20, 2023, the United States District Court for the Southern District of Texas referred the *Bender* Action to the Southern District of Alabama to resolve the issues of consolidation and appointment of Lead Plaintiff. On January 24, 2024, Judge Terry F. Moorer ordered the *Levson* and *Passmore* Actions consolidated with the *Bender* Action ("Consolidated Actions"), ruled the Southern District of Texas the proper venue, and ordered the *Levson* and *Passmore* Actions transferred to this District. Dkt. No. 36.

35.    On February 1, 2024, the Court appointed Eric Bender and Nader Misri as Lead Plaintiffs and appointed Lead Plaintiffs' chosen counsel, The Rosen Law Firm, P.A. as Lead Counsel, and Condon Tobin Sladek Thornton Nerenberg PLLC as Liaison Counsel. Dkt. No. 39.

36.    On April 5, 2024, Plaintiffs filed the Amended Class Action Complaint against Defendants. Dkt. No. 49. Defendants filed their Motion to Dismiss on June 7, 2024, Plaintiffs filed their

opposition on July 19, 2024, and the Motion to Dismiss was fully briefed on August 20, 2024. Dkt. Nos. 57, 60, 63. On September 10, 2024, this Court held oral argument on Defendants' motion to dismiss. Dkt. Nos. 62, 64. On February 4, 2024, the Parties informed the Court that all claims had been resolved and that the Parties would be executing a settlement agreement. The Court has not yet ruled on Defendants' Motion to Dismiss.

### C.      The Bankruptcy Proceedings

37.      On September 24, 2024, Defendant Vertex filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Texas (*In re Vertex Energy Inc., et al.*, No. 24-90507). Plaintiffs filed a Proof of Claim Form on October 21, 2024. On December 20, 2024, Vertex filed its Second Amended Chapter 11 Plan of Reorganization ("Plan"). Plaintiffs successfully fought to ensure that their  and the claims of the Class against the Individual Defendants would not be released in the bankruptcy, as has happened in other recent cases in the Southern District of Texas. That same day, Judge Christopher M. Lopez entered the Confirmation Order confirming the Plan with an effective date of January 21, 2025. The bankruptcy court discharged all claims against Vertex, leaving the individual defendants and their insurance as the only source for a potential settlement or judgment payment. Upon the effective date, Vertex emerged from bankruptcy as a private company.

### D.      Settlement Negotiations and Terms

38.      On November 6, 2024, the Parties participated in a full-day mediation with David M. Murphy of Philips ADR Enterprises P.C. Though the Consolidated Actions were not settled on that date, the Parties continued discussions with mediator Murphy, and on December 5, 2024, all Parties accepted the mediator's proposal for $6,300,000 in cash to settle the Consolidated Actions, in exchange for a full release of all claims against all Defendants. The Parties executed a Memorandum of Understanding on February 4, 2025.

39.      On April 18, 2025, Plaintiffs filed the Stipulation with exhibits documenting the terms of

the Settlement.

40.    On April 21, 2025, the Court preliminarily approved the class action settlement and certified the class for settlement purposes, entering a scheduling order setting the Settlement Hearing date, as well as deadlines leading up to the Settlement Hearing.

## III.    EVALUATION OF THE PROPOSED SETTLEMENT

41.    Lead Counsel respectfully submits that the substantive terms of the Settlement and the method used to arrive at the Settlement, as well as the proposed Plan of Allocation are fair, reasonable, and adequate and should be approved by the Court.

42.    In determining whether to approve a settlement the Court looks to the factors laid out in Fed. R. Civ. P. 23(e)(2) which says Courts should grant final approval if:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

43.    In addition to the Rule 23(e)(2) factors, courts within the Fifth Circuit generally apply the following criteria when evaluating the fairness of a proposed class action settlement: (i) the existence of fraud or collusion behind the settlement; (ii) the complexity, expense, and likely duration of the litigation; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the probability of plaintiffs' success on the merits; (v) the range of possible recovery; and (vi) the opinions of class counsel, class representatives, and absent class members. *See Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Under the foregoing factors, the Settlement is fair, reasonable, and adequate, and warrants the Court's final approval.

### A.    The Settlement Was Not the Product of Fraud or Collusion

44.    This present Settlement is the result of arm's-length negotiations. This litigation was

hotly contested, and settlement negotiations were intense and included a face-to-face mediation attended by counsel for all parties to the Settlement before an experienced mediator, David M. Murphy of Philips ADR Enterprises P.C. During negotiations, the parties presented their respective views regarding the merits of the Consolidated Actions, available defenses, the evidence and damages analyses. In support of their positions, the parties drafted detailed mediation statements.

45.    Counsel on both sides have many years of experience in litigating complex litigation, including securities class actions, and have negotiated numerous other settlements. Because there is no evidence or even a suggestion that the Settlement is the product of collusion between the parties, the first factor supports approval of the Settlement.

46.    Plaintiffs entered into the proposed Settlement only after performing the work necessary to inform them and Lead Counsel as to the strengths and weaknesses of the case. The Settlement is, therefore, the result of arm's-length negotiations between and among well-informed, experienced counsel.

**B.    The Stage of Proceedings and Discovery Completed Gave the Parties Sufficient Information to Negotiate an Adequate and Reasonable Settlement**

47.    Here, despite the PSLRA's stay on discovery, Plaintiffs have conducted extensive informal discovery. Plaintiffs have reviewed all publicly available documents relating to Defendants' purported misstatements, examined all related analysts' reports, and utilized subject matter experts, as well as a damages expert. Utilizing the information gleaned from this informal discovery Plaintiffs filed the *Bender* Action and Amended Complaint, as well as opposed Defendants' Motion to Dismiss. Plaintiffs fully understand the merits of their case. *See In re Dell Inc.,* No. A-06-CA-726-SS, 2010 WL 2371834, at *8 (W.D. Tex. June 11, 2010), *aff'd, appeal dismissed sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) (accepting that the PSLRA stay is not a bar to settlement when Plaintiffs investigated their "claims as diligently as possible outside the context of traditional discovery.")

11

48.    As a result of these efforts, Plaintiffs and Lead Counsel obtained a full understanding of the legal and factual issues surrounding this case, knowledge sufficient to negotiate an excellent Settlement, and to confirm that it is fair, reasonable, and adequate.

### C.    The Probability of Success on the Merits, the Possible Range of Recovery and the Certainty of Damages, Support Approval of the Settlement

49.    Without a Settlement, Plaintiffs face protracted and expensive litigation that could last for years more, with no guarantee of matching or exceeding the recovery the Settlement provides now.

50.    While Plaintiffs and Lead Counsel believe that Plaintiffs' claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving and collecting a greater recovery. The Settlement provides for a cash payment of $6,300,000, while material risks exist that Plaintiffs and the Settlement Class might recover substantially less than the Settlement Amount or nothing at all by continuing to litigate the Consolidated Actions.

51.    Even if Plaintiffs overcame Defendants' motion to dismiss, the Court certified the Class, and Plaintiffs withstood summary judgment and pre-trial motions, Plaintiffs would try their case to a jury and have to obtain a verdict on liability, including loss causation. If victorious at trial on liability and establishing a per share damage amount that may be materially less that Plaintiffs' damages expert calculates, Plaintiffs at the same time would attempt to parry post-trial motions and appeals. Further, Plaintiffs would have to engage in a claims process to cause as many Class members as possible to file claims. Given the passage of time, claims rates might fall materially if the Settlement Class waits much longer to receive payment.

52.    Establishing damages in securities class actions is difficult. Disentangling the market's reaction to various pieces of news is complicated and requires expert analysis and testimony, from both sides. Defendants would oppose any expert testimony Plaintiffs present with an expert expressing either that the Class suffered no damages or that the per share damage amount was materially less that what Plaintiffs' expert calculates. It is impossible to predict how a jury would react to this "battle of experts."

A material risk exists, therefore, that a jury might disagree with Plaintiffs' expert's testimony on damages per share or might find that no damages were suffered. The Court might rule Plaintiffs' damages expert and/or his theory of damages is either legally or factually insufficient. Plaintiffs could prevail on liability at trial, and the recovery could be materially less than the $6,300,000 Settlement Amount or nothing at all.

53.    Even if Plaintiffs obtained a judgment materially in excess of the Settlement Amount after trial and recover from Defendants, the additional time that it would take to litigate this case through trial, post-trial motions, and the appellate process could deny the Settlement Class any recovery for years, further reducing the value of such a judgment.

54.    The Settlement eliminates the expense and delay of continued litigation and the risk that the Settlement Class could receive a lower or no recovery.

55.    Indeed, Defendants have argued in their Motion to Dismiss that Plaintiffs could not establish that the statements about the EBIDTA and hedging earnings were false, materially misleading, or made with scienter. Defendants have claimed that the statements made by Defendant Cowart about the progress and status of the hedging and the risks associated with hedging that Vertex disclosed were generally understood by the market. Additionally, Defendants claim that the statements are projections about the future, were made with proper risk disclosures, and not knowingly false when made. Accordingly, Defendants claim the statements are protected under the PSLRA's Safe Harbor provision. Further, Defendants claim that they possessed no information that contradicted the public statements or that they chose not to disclose. Accordingly, Defendants assert that they did not make statements with scienter.

**D.    The Complexity, Expense, and Likely Duration of the Litigation All Support the Settlement**

56.    The complexity, expense, and likely duration of any litigation, also favor approval of the Settlement in the Consolidated Actions. The damages issue is complex and the expert analysis

incorporated many of these complexities. There would be hard-fought motions for summary judgment and an expensive trial. Indeed, the expense of trial would likely be high and carries with it the distinct possibility that the trial would result in no recovery.

57.     If the Settlement Class was certified and the claims survived summary judgment, preparation for trial, including the filing of motions *in limine* (*e.g.*, inevitable *Daubert* motions), would require considerable time and attention from all parties and the Court. The trial itself would then be potentially lengthy and surely complex, involving the presentation of evidence related to each of the elements of the claims, with respect to liability, loss causation, and damages, as discussed above.

58.     Furthermore, a verdict for Plaintiffs at trial would trigger an appeal by Defendants to the Fifth Circuit Court of Appeals. An appeal, even if unsuccessful, would delay recovery for several years. A successful appeal would result in no recovery for the Settlement Class. Conversely, settlement now results in a substantial and relatively immediate recovery, without attendant risks, delay, and further litigation expenses, including for expert discovery, summary judgment, trial, and post-trial proceedings. This factor weighs heavily in favor of approval of the Settlement.

**E.      The Settlement Is an Excellent Result for Plaintiffs and the Class**

59.     The range of possible recovery strongly supports the Settlement Plaintiffs have  been able to obtain for the Settlement Class. Pursuant to the Settlement, the Settlement Class will recover $6,300,000, net of administrative costs and attorneys' fees and expenses. This recovery is an excellent result for the Settlement Class, especially when viewed in light of the risks of continued litigation. This percentage recovery exceeds the 1.8% median settlement value in 2022 for all securities class actions. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* at p. 17 (January 24, 2023) (Exhibit 6 hereto).

**F.      Lead Counsel, Class Representatives and Absent Class Members Support the Settlement**

60.     Lead Counsel, Plaintiffs, and the Settlement Class Members favor approval of the

Settlement. Over 28,445 Postcard and Long Notice and Proof of Claim forms were issued to Settlement Class Members and/or Nominee brokerage firms to participate in the recovery, but not a single Settlement Class Member submitted an objection with regard to any term of the Settlement, nor have there been any requests for exclusion. *See* Craig Decl. at ¶¶8, 13-14. The positive response by the Settlement Class militates in favor of finally approving the Settlement.

## IV.     THE NOTICE PROGRAM

61.     After the Settlement was preliminarily approved, Plaintiffs caused 28,445 copies of the notices to be mailed or emailed to potential Settlement Class Members, including nominee account holders and institutional groups, regarding the proposed Settlement of this action as described in the Criag Declaration. *See* Craig Decl. ¶6-8. Additionally, the Summary Notice and Proof of Claim form were published on the Claims Administrator's website and a Summary Notice was also published electronically on *GlobeNewswire* on May 19, 2025. *Id*. at ¶¶10, 12.

62.     The Notice explains the background and terms of the Settlement and provided potential members of the Settlement Class with the date of the final approval hearing. The Notice provides Settlement Class Members with a full and explicit explanation of the Settlement, the Plan of Allocation, the anticipated fee and expense requests and award to Plaintiffs and the rights and options of Settlement Class Members. *Id*. This Notice, and the means by which it was sent, comply with the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process, and is similar to the content and means of dissemination approved in other cases.

63.     The Notice provided Lead Counsel's estimates of the per share recovery to Settlement Class Members with and without the requested attorneys' fees and reimbursement of expenses and award to Plaintiffs. These calculations were made in consultation with a damages consultant. *Id*.

## V.     THE PLAN OF ALLOCATION SHOULD BE APPROVED AS FAIR AND REASONABLE

64.     The Plan of Allocation was formulated by Lead Counsel in consultation with a damages

consultant and was designed to ensure distribution of the settlement fund that was fair and consistent with Lead Counsel's theory of the case.

65.    The Net Settlement Fund is to be distributed on a pro rata basis pursuant to the Plan of Allocation to those Settlement Class Members submitting valid claims ("Authorized Claimants").

66.    As set forth in the Long Notice, the Claims Administrator shall determine each Authorized Claimant's pro rata share of the Net Cash Settlement Amount based upon each Authorized Claimant's "Recognized Claim," and is thus fair, reasonable, and adequate.

67.    The Plan of Allocation does not discriminate, and each Authorized Claimant will receive a pro rata share of the Net Settlement Fund based on when the claimant bought and sold Vertex common stock. Lead Counsel and their damages consultant determined this was the fairest method of allocation of the Net Settlement Fund.

## VI.    THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

68.    The percentage of recovery method for compensating attorneys in common fund cases is preferred and appropriate. First, it is consistent with applicable Fifth Circuit case law as set forth in the supporting memorandum of law filed herewith ("Fee Memorandum"). Second, it is consistent with practices of the private marketplace where contingency attorneys are customarily compensated on a percentage of the recovery method. Third, it provides Lead Counsel with a strong incentive to achieve a maximum possible recovery in a reasonable amount of time. Fourth, use of the percentage method decreases the burden imposed upon the Court by the "lodestar" method and assures that Settlement Class Members do not experience undue delay in receiving their share of the settlement.

69.    Lead Counsel seeks an award of attorneys' fees of one-third of the Settlement Amount, a percentage that is within the range of fees awarded in this Circuit and other federal courts in cases of this type, as set forth in the Fee Memorandum.

70.    The fairness and reasonableness of the requested fee is further demonstrated by the fact

the Settlement is in line with other settlements. The Settlement represents 3.49% of Plaintiffs' best case scenario damage when accounting for statistically significant stock drops. This percentage recovery exceeds the 1.8% median settlement value in 2022 for all securities class actions. *See* Ex. 6, at 23-24.

71.     Lead Counsel has aggressively and efficiently litigated this action. Lead Counsel's experience in class action and securities litigation allowed them to identify complex issues involved in this action and to formulate strategies to effectively and efficiently prosecute this complex litigation.

72.     Additionally, Lead Counsel submits that their reputation as attorneys able and willing to see a meritorious case through trial and appeals assisted in the Settlement negotiations.

73.     As discussed above, Plaintiffs and their counsel faced significant risks in pursuing this action. In fact, this was not an action where any recovery was assured. Adding to these risks, Lead Counsel has received no compensation during the time the action has been pending. Their fees are contingent and dependent upon a successful result and an award by this Court. Plaintiffs' Counsel believes that the outstanding Settlement was primarily the result of their persistence, hard work, and skill.

74.     The quality legal services performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. Defendants were represented by very able counsel, Steptoe LLP, a law firm possessing significant experience with complex securities litigation.

75.     These firms spared no effort in the defense of its clients. In the face of this substantial opposition Lead Counsel were nonetheless able to develop the case that was sufficiently strong to settle the Consolidated Actions on terms favorable to the Settlement Class.

76.     The fairness and reasonableness of the requested fee is further demonstrated when "cross-checked" with the lodestar/multiplier analysis.

77.     The Rosen Law Firm, P.A. Lead Counsel, Condon Tobin Sladek Thornton Nerenberg PLLC as Liaison Counsel, and the Schall Law Firm as Additional Counsel expended a total of 1,346.1

hours of professional time for a total lodestar of $1,646,192.90 as evidenced in the Declaration of Jacob A. Goldberg on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses, attached hereto as Exhibit 2, the Declaration of Stuart L. Cochran on behalf of Condon Tobin Sladek Thornton Nerenberg PLLC Concerning Attorneys' Fees and Expenses, attached hereto as Exhibit 7, and the Declaration of Brian Schall on behalf of The Schall Law Firm, attached hereto as Exhibit 8.

78.　　Granting Lead Counsel's requested fee of one-third the settlement fund ($2,100,000) results in a multiplier of 1.28.

79.　　Lead Counsel seeks an order approving their fee request of $2,100,000.

## VII.　THE EXPENSES INCURRED WERE NECESSARY TO EFFECTIVELY PROSECUTE THIS ACTION

80.　　Lead Counsel also requests reimbursement of $102,065.45 in expenses incurred to prosecute this action. In addition to online legal research, copying costs, postage, court filing fees, and other similar costs, Lead Counsel incurred substantial expense in connection with the retention of multiple experts, private investigators, travel, and in mediation fees. The expenses incurred were necessary to effectively prosecute this action and are reflected in the records of Lead Counsel.

81.　　Lead Counsel retained experts on the issue of damages as well as on the subject matter in this case. Lead Counsel also retained a privative investigative firm to investigate Vertex Energy.

82.　　Travel expenses were necessary as Lead Counsel travelled out of state to attend mediation.

83.　　Laison Counsel also requests reimbursement of $629.50 in expenses incurred to prosecute this action. Plaintiffs seek a total expenses reimbursement of $102,695.15.

## VIII.　A NOMINAL AWARD TO PLAINTIFFS IS WARRANTED

84.　　Like the requested fee and expenses, the Long Notice and Summary Notice advised Settlement Class Members that Plaintiffs would seek an award of up to $15,000 in total ($5,000 each). No specific objection has been submitted relating to this award.

85.     Plaintiffs seek $15,000 in total awards, $5,000 for each of Eric Bender, Nader Misri, and Phillip Laudino, for their lost time and effort in the prosecution and oversight of this action pursuant to the PSLRA. As demonstrated in the Declaration of Co-Lead Plaintiff Eric Bender, attached hereto as Exhibit 3, the Declaration of Co-Lead Plaintiff Nadar Misri, attached hereto as Exhibit 4, and the Declaration of Additional Plaintiff Phillip Laudino, attached hereto as Exhibit 5, Plaintiffs were actively involved in this litigation, reviewed the Complaint, reviewed the opposition to the motion to dismiss, participated in the settlement negotiations, discussed case strategy with Lead Counsel, and engaged in numerous communications with counsel. Plaintiffs' efforts in this case were important and led to the successful resolution of this matter.

86.     Given these important contributions and the time and effort expended by Plaintiffs, a nominal award of $15,000 in total is warranted.

I declare under penalty of perjury that the foregoing is true and correct. Executed, this 25th day of June 2025 in Jenkintown, Pennsylvania.

Respectfully submitted,

*s/ Gonen Haklay*
Gonen Haklay

## CERTIFICATE OF SERVICE

I hereby certify that on this on the 25th day of June 2025 a true and correct copy of the foregoing document and the exhibits thereto, was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Gonen Haklay